[No. B222609. Second Dist., Div. One. Nov. 30, 2011.]

DOW CHEMICAL CANADA ULC, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CARLOS ORLANDO FANDINO et al., Real Parties in Interest.

COUNSEL

King & Spalding, Gennaro A. Filice III, Paul R. Johnson; Brown Eassa & McLeod, Troy D. McMahan and James L. Mink for Petitioner.

No appearance for Respondent.

Haight Brown & Bonesteel, William O. Martin, Jr., Jules S. Zeman and R. Bryan Martin for Real Parties in Interest Bombardier Inc., Bombardier Recreational Products Inc., and BRP US Inc.

No appearance for Real Party in Interest Carlos Orlando Fandino.

OPINION

JOHNSON, J.—This case presents the question, left open in *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 108–113, 117–121 [94 L.Ed.2d 92, 107 S.Ct. 1026] and now resolved by *J. McIntyre Machinery, Ltd. v. Nicastro* (2011) 564 U.S. ___ [180 L.Ed.2d 765, 131 S.Ct. 2780], of

whether placing products into the stream of commerce in a foreign country (or another state), aware that some may or will be swept into the forum state, is enough to subject a defendant to personal jurisdiction—or whether due process requires that the defendant have engaged in additional conduct, directed at the forum, before it can be found to have purposefully availed itself of the privilege of conducting activities within the forum state.

We conclude defendant Dow Chemical Canada ULC is not subject to personal jurisdiction in California because it did not purposefully avail itself of the privilege of conducting activities within the forum state. Accordingly, the petition for writ of mandate is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2008, Carlos Orlando Fandino, and eight other California residents (collectively referred to as Fandino), were injured when a 1996 Sea-Doo GSX watercraft exploded on the California side of Lake Havasu. This product liability action was subsequently brought against Dow Chemical Canada ULC (Dow), among others, based on an alleged defect in the fuel tank, which caused the explosion.[1]

After being served with the complaint, Dow appeared specially and moved to quash service of the summons on the ground that it lacked the requisite minimum contacts with California to justify the state's assertion of personal jurisdiction. Its principal place of business is Calgary, Alberta, Canada; it has never advertised any products in California; it has never sold products in, or to customers in, California; it has never maintained an office or other facility of any kind in California; it has never been qualified to do business in California; and it has no agent for service of process in California. Further-more, Dow contended, all gas tanks and gas tank filler necks manufactured by the former Wedco Division of Union Carbide Canada were manufactured exclusively in Canada, and the gas tanks and gas filler tank necks that are the subject of this litigation were sold by Union Carbide Canada to Bombardier, Inc., exclusively in Canada pursuant to purchase order agreements entered into in Canada.

---

[1] Before 1998, Union Carbide Canada, Inc., a Canadian corporation, had a division known as Wedco Molded Products. The Wedco Division produced molded polyurethane products exclusively in Canada, including gas tanks and gas tank filler necks sold to Bombardier, Inc., a Canadian company, incorporated in Canada, the manufacturer and distributor of the subject Sea-Doo. In 1998, Union Carbide sold its Wedco Division to an unrelated group that established an independent Nova Scotia entity known as Wedco Molded Products Company. In 2001, Union Carbide Canada amalgamated under Canadian law with Dow Chemical Canada, Inc., a Canadian corporation. Dow Chemical Canada, Inc.'s corporate name was subsequently changed to Dow Chemical Canada ULC. Prior to the amalgamation, Union Carbide Canada's business was the manufacture, sale and distribution of Union Carbide products in Canada.

Fandino contended, however, that the court had specific jurisdiction because Dow knew that its gas tanks were being installed in products that would be sold in the United States, including California. Relying on the "stream-of-commerce plus" test, Dow, in a reply, argued that placing a product in the stream of commerce in a foreign country is insufficient conduct to confer personal jurisdiction, even if the component-part manufacturer knows that the end product will eventually be sold in the United States, including California.

The Los Angeles Superior Court rejected the stream-of-commerce plus standard. It denied Dow's motion based solely on the declaration of a Bombardier employee, Pierre Biron, that sometime "in the early 1990s," he told unidentified "representatives" of Union Carbide Canada that Bombardier personal watercraft, which incorporated the component gas tanks, would be sold across the United States, including California. "On this basis, the court concludes, as a matter of law, that Union Carbide, and therefor Dow, purposely availed itself of this jurisdiction for the sale and distribution of its component parts."

Dow filed in the California Court of Appeal a timely petition for writ of mandate to direct the Los Angeles Superior Court to enter an order quashing service of summons for lack of personal jurisdiction. We summarily denied Dow's petition for writ of mandate. The California Supreme Court denied Dow's timely petition for discretionary review. The United States Supreme Court granted Dow's petition for certiorari on June 28, 2011, ordered that the judgment be vacated and remanded the matter to this court for further consideration in light of *J. McIntyre Machinery, Ltd. v. Nicastro, supra*, 564 U.S. ___ [131 S.Ct. 2780].

## DISCUSSION

We are presented with the question whether merely depositing goods in the stream of commerce, with knowledge that some will end up in a finished product manufactured by another and sold in the forum state, is enough to satisfy the minimum contacts standard for personal jurisdiction. Union Carbide Canada (Dow) manufactured gas tanks and sold them to Bombardier exclusively in Canada. The Los Angeles Superior Court expressly based personal jurisdiction on the sole finding that Union Carbide Canada was informed by Bombardier that Bombardier's Sea-Doo watercraft (incorporating the component gas tanks) would be sold in the United States, including California.

■ "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. '[T]he constitutional touchstone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposefully established "minimum contacts" in the forum State.' *Burger King Corp.* v. *Rudzewicz*, 471 U. S. 462, 474 [85 L.Ed.2d 528, 105 S.Ct. 2174] (1985), quoting *International Shoe Co.* v. *Washington*, 326 U. S. [310], at 316 [90 L.Ed. 95, 66 S.Ct. 154] [(1945)]. Most recently we have reaffirmed the oft-quoted reasoning of *Hanson* v. *Denckla*, 357 U. S. 235, 253 [2 L.Ed.2d 1283, 78 S.Ct. 1228] (1958), that minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Burger King*, 471 U. S., at 475. 'Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.' *Ibid.*, quoting *McGee* v. *International Life Insurance Co.*, 355 U. S. 220, 223 [2 L.Ed.2d 223, 78 S.Ct. 199] (1957) (emphasis in original)." (*Asahi Metal Industry Co.* v. *Superior Court, supra*, 480 U.S. at pp. 108–109.)

In *Asahi*, the United States Supreme Court ruled that a defendant's mere awareness that components (tire valves) it manufactured, sold, and delivered outside the United States would reach the forum state in a stream of commerce was not sufficient to satisfy due process limitations on the exercise of jurisdiction over a foreign defendant. However, that ruling was a fractured set of opinions, expressing separate standards for deciding the issue, none of which received the support of a majority of the court.

■ Justice O'Connor announced the judgment of the Supreme Court,[2] finding no jurisdiction over the foreign defendant. But portions of her opinion—including a key section regarding founding jurisdiction upon the location of goods arriving by a stream of commerce—were joined by only three other justices (Rehnquist, Powell, and Scalia). Under Justice O'Connor's view, placement of a product into a stream of commerce with awareness that it may be carried into a forum state would not, by itself, be adequate for the exercise of jurisdiction over a defendant. (*Asahi Metal*

---

[2] Justice O'Connor announced the judgment of the Supreme Court and delivered the unanimous opinion of the court with respect to part I, the opinion of the court with respect to part IIB, in which Chief Justice Rehnquist, and Justices Brennan, White, Marshall, Blackmun, Powell and Stevens joined, and an opinion with respect to parts IIA and III, in which Chief Justice Rehnquist and Justices Powell and Scalia joined.

*Industry Co. v. Superior Court, supra,* 480 U.S. at pp. 108–113.) "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." (*Id.* at p. 112.)

Justice Brennan filed an opinion concurring in part and concurring in the judgment, key portions of which also received the support of only four Justices (Brennan, White, Marshall, and Blackmun), which disagreed with Justice O'Connor's view, and expressed the position that a chain of distribution carrying a product into the forum should be adequate to permit the exercise of jurisdiction over foreign defendants. (*Asahi Metal Industry Co. v. Superior Court, supra,* 480 U.S. at pp. 116–121.) "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. . . . Accordingly, most courts and commentators have found that jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct." (*Id.* at p. 117.) Justice Stevens joined neither of these opinions, and separately presented his own views (joined by Justices White and Blackmun) that the jurisdictional question in such cases should depend upon the volume, value, and hazardous character of the products involved. (*Id.* at pp. 121–122.)

In *J. McIntyre Machinery, Ltd. v. Nicastro, supra,* 564 U.S. ___ [131 S.Ct. 2780], the Supreme Court resolved the question in *Asahi* left unresolved by the competing opinions. The court considered whether the State of New Jersey could exercise jurisdiction over a foreign manufacturer solely because the manufacturer targeted the United States market for the sale of its product,

which was purchased by a forum state consumer. The Supreme Court reversed the New Jersey Supreme Court's finding of personal jurisdiction over an English manufacturer in a product liability action. (*Id.* at pp. \_\_\_–\_\_\_, \_\_\_ [131 S.Ct. at pp. 2785–2786, 2791].) The plaintiff seriously injured his hand while using a metal-shearing machine at work in New Jersey. (*Id.* at pp. \_\_\_, \_\_\_ [131 S.Ct. at pp. 2786, 2795].) J. McIntyre Machinery, Ltd. (J. McIntyre), made the machine in England, where the company is incorporated and operates. (*Id.* at p. \_\_\_ [131 S.Ct. at p. 2786].) J. McIntyre engaged an independent distributor in Ohio to sell its machines in the United States. (*Id.* at pp. \_\_\_, \_\_\_ [131 S.Ct. at pp. 2786, 2796].) J. McIntyre accompanied the distributor at United States trade shows (though not in New Jersey) to promote sales. (*Id.* at p. \_\_\_ [131 S.Ct. at p. 2786].) One or more machines ended up in New Jersey. (*Ibid.*) The New Jersey Supreme Court asserted jurisdiction "because the injury occurred in New Jersey; because petitioner knew or reasonably should have known 'that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states'; and because petitioner failed to 'take some reasonable step to prevent the distribution of its products in this State.' [Citation.]" (*Ibid.*)

■ In determining that J. McIntyre was not subject to personal jurisdiction in New Jersey, Justice Kennedy, joined by Chief Justice Roberts, Justice Scalia and Justice Thomas, in a plurality opinion, reasoned that "[b]oth the New Jersey Supreme Court's holding and its account of what it called '[t]he stream-of-commerce doctrine of jurisdiction,' [citation], were incorrect, however. This Court's *Asahi* decision may be responsible in part for that court's error regarding the stream of commerce, and this case presents an opportunity to provide greater clarity." (*J. McIntyre Machinery, Ltd. v. Nicastro, supra,* 564 U.S. at p. \_\_\_ [131 S.Ct. at p. 2786].) Moreover, "[t]he imprecision arising from *Asahi,* for the most part, results from its statement of the relation between jurisdiction and the 'stream of commerce.' The stream of commerce, like other metaphors, has its deficiencies as well as its utility. It refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact. This Court has stated that a defendant's placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment. *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U. S. 286, 298 [62 L.Ed.2d 490, 100 S.Ct. 559] (1980) (finding that expectation lacking). But that statement does not amend the general rule of personal jurisdiction. It merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum—itself an unexceptional proposition—as where manufacturers or distributors 'seek

to serve' a given State's market. *Id.* at 295. The principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson*[ *v. Denckla* (1958) 357 U.S. 235,] 253 [2 L.Ed.2d 1283, 78 S.Ct. 1228]." (*Id.* at p. ___ [131 S.Ct. at p. 2788].)

The Supreme Court concluded "that the authority to subject a defendant to judgment depends on purposeful availment, consistent with Justice O'Connor's opinion in *Asahi*." (*J. McIntyre Machinery, Ltd. v. Nicastro, supra,* 564 U.S. at p. ___ [131 S.Ct. at p. 2790].) Thus, "[r]espondent has not established that J. McIntyre engaged in conduct purposefully directed at New Jersey. Recall that respondent's claim of jurisdiction centers on three facts: The distributor agreed to sell J. McIntyre's machines in the United States; J. McIntyre officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey. The British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State. Indeed, after discovery the trial court found that the 'defendant does not have a single contact with New Jersey short of the machine in question ending up in this state.' [Citation.] These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market." (*Id.* at p. ___ [131 S.Ct. at p. 2790].)

In an opinion concurring in the judgment, Justice Breyer, joined by Justice Alito, concluded that precedents did not support jurisdiction based on "a single isolated sale, even if accompanied by the kind of sales effort indicated here." (*J. McIntyre Machinery, Ltd. v. Nicastro, supra,* 564 U.S. at p. ___ [131 S.Ct. at p. 2792] (conc. opn. of Breyer, J.).) The concurrence noted no evidence of a "regular course" of sales in New Jersey, but it continued its assessment by pointing out: "there is no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else. Mr. Nicastro, who here bears the burden of proving jurisdiction, has shown no specific effort by the British Manufacturer to sell in New Jersey." (*Ibid.*) Consistent with that observation, the concurrence acknowledged "the constitutional demand for 'minimum contacts' and 'purposefu[l] avail[ment],' each of which rest upon a particular notion of defendant-focused fairness." (*Id.* at p. ___ [131 S.Ct. at p. 2793].) The concurrence found that the *J. McIntyre* case was not an appropriate vehicle to consider a request to refashion jurisdictional rules. (*Id.* at pp. ___–___ [131 S.Ct. at pp. 2792–2793].)

Justice Ginsburg joined neither of these opinions, and separately presented her own views (joined by Justice Sotomayor and Justice Kagan) that "McIntyre UK, by engaging McIntyre America to promote and sell its machines in the United States, 'purposefully availed itself' of the United States market nationwide, not a market in a single State or a discrete collection of States. McIntyre UK thereby availed itself of the market of all States in which its products were sold by its exclusive distributor." (*J. McIntyre Machinery, Ltd. v. Nicastro, supra*, 564 U.S. at p. ___ [131 S.Ct. at p. 2801] (dis. opn. by Ginsburg, J.).) Moreover, courts have agreed that "a local plaintiff injured by the activity of a manufacturer seeking to exploit a multistate or global market . . . have repeatedly confirmed that jurisdiction is appropriately exercised by courts of the place where the product was sold and caused injury." (*Id.* at p. ___ [131 S.Ct. at p. 2804].)

In the case at bar, at no time did Dow (successor to Union Carbide Canada) engage in any activities in California that reveal an intent to invoke or benefit from the protection of its laws. Nor is there any evidence that the design of Dow's product was in any way California specific. It is not sufficient for jurisdiction in this case that the defendant Dow might have predicted or known that its products would reach California. (See *J. McIntyre Machinery, Ltd. v. Nicastro, supra*, 564 U.S. at p. ___ [131 S.Ct. at p. 2791].)

Union Carbide Canada never undertook to ship its components to California; it supplied its gas tanks and filler necks exclusively in Canada. It matters not whether Union Carbide Canada knew or could have predicted that another party—Bombardier Inc.—would sell Sea-Doos incorporating the Union Carbide Canada gas tanks in California. Dow (as successor to Union Carbide Canada) did not advertise or market products in California; it never sold products in, or to customers in, California; it never maintained an office or other facility of any kind in California; it has never been qualified to do business in California; and it has no agent for service of process in California. Due process requires that Dow have engaged in additional conduct, directed at the forum, before it can be found to have purposefully availed itself of the privilege of conducting activities within California.

■ "Due process protects petitioner's right to be subject only to lawful authority. At no time did petitioner engage in any activities in [California] that reveal an intent to invoke or benefit from the protection of its laws. [California] is without power to adjudge the rights and liabilities of [Dow, as successor to Union Carbide Canada], and its exercise of jurisdiction would violate due process." (*J. McIntyre Machinery, Ltd. v. Nicastro, supra*, 564 U.S. at p. ___ [131 S.Ct. at p. 2791].)

## DISPOSITION

Dow's petition is granted. Let a writ of mandate issue directing the trial court to vacate its order denying Dow's motion to quash service of summons and to enter a new order granting the motion. Dow is to recover its costs in this proceeding.

Mallano, P. J., and Rothschild, J., concurred.

On December 21, 2012, the opinion was modified to read as printed above. The petition of real parties in interest Bombardier Inc, Bombardier Recreational Products, Inc., and BRP US Inc., for review by the Supreme Court was denied April 18, 2012, S199784. Kennard, J., and Chin, J., did not participate therein.