Filed 5/21/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| BOMBARDIER RECREATIONAL PRODUCTS, INC., | C065603 |
| Cross-complainant and Appellant, | (Super. Ct. No. 165714) |
| v. | |
| DOW CHEMICAL CANADA ULC, | |
| Cross-defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Shasta County, Monica Marlowe, Judge. Affirmed.

Haight Brown & Bonesteel, William O. Martin, Jr., Jules S. Zeman, and R. Bryan Martin for Cross-complainant and Appellant.

King & Spalding, Gennaro A. Felice III, and Paul R. Johnson for Cross-defendant and Respondent.

This appeal challenges the trial court's quashing service of summons for lack of personal jurisdiction. We review the issue as a matter of law (*Hall v. LaRonde* (1997) 56 Cal.App.4th 1342, 1346), and we affirm the trial court's determination.

1

FACTS

The underlying plaintiff sued appellant Bombardier Recreational Products, Inc. (Bombardier), for personal injuries. He claimed that in 2007, while trying to start a Sea-Doo personal watercraft manufactured by Bombardier, the watercraft caught fire, causing him serious injuries. He alleged Bombardier was negligent for failing to inform him of a recall for the watercraft's allegedly defective fuel tank.

Bombardier filed a cross-complaint against respondent Dow Chemical Canada ULC (Dow Canada). Dow Canada is a successor to Union Carbide Canada, Inc. (Union Carbide Canada), whose Wedco Moulded Products division (Wedco), for a time, manufactured fuel tanks Bombardier installed in its personal watercraft.

Appearing specially, Dow Canada filed a motion to quash service of summons for lack of personal jurisdiction. It contended it and its predecessors lacked sufficient contacts with California to be subject to suit here. Prior to 1998, Wedco manufactured fuel tanks and fuel tank filler necks used by Bombardier in its personal watercraft. The fuel tanks were manufactured exclusively in Canada. Wedco sold the fuel tanks to Bombardier exclusively in Canada pursuant to purchase orders made in Canada. Bombardier manufactured its personal watercraft in Canada. Union Carbide Canada sold Wedco to an unrelated third party in 1998.

Union Carbide Canada, including Wedco, never had a registered agent in California, never qualified to do business in California, never manufactured any products in California, never had any employees, offices, or facilities in California, and never advertised or sold any personal watercraft fuel tanks or fuel tank filler necks in California.

In 2001, Union Carbide Canada merged with Dow Chemical Canada, Inc., and the company was later renamed Dow Chemical Canada ULC.

Dow Canada is a Canadian corporation with its principal place of business in Calgary, Alberta, Canada. It has never had an agent for service of process in California,

2

never qualified to do business in California, never manufactured any products in California, never had any employees, officers or other facilities in California, and never advertised or sold products in California or to customers in California.

In its opposition to the motion to quash service, Bombardier did not contest Dow Canada's factual assertions. Rather, it argued Dow Canada had sufficient contacts with California because Union Carbide Canada had known Bombardier would incorporate its fuel tanks and fuel tank filler necks in personal watercraft it intended to sell in the United States, including California. Bombardier submitted a declaration from one of its component part buyers, Pierre Biron, stating he had informed Union Carbide Canada its fuel tanks and fuel tank filler necks would be used in watercraft sold across the United States, including California. Bombardier also submitted a declaration from its director of intellectual property, Jean Daunais, stating Union Carbide Canada, as part of its contract to supply Bombardier with fuel tanks, had agreed to produce tanks that complied with regulatory standards promulgated by the United States Coast Guard.

Dow Canada objected to Bombardier's evidence in part because the declarations were signed under penalty of perjury under the laws of the United States of America, not the laws of the State of California as required by Code of Civil Procedure section 2015.5.

The trial court granted the motion to quash, and it sustained the objections against Bombardier's evidence. It determined California lacked personal jurisdiction because Dow Canada lacked minimum contacts with the state. Dow Canada had not purposefully engaged in activities in the state or availed itself of the benefits of conducting business here. The court sustained Dow Canada's objections to Bombardier's evidence, but it stated that even if Dow Canada had known Bombardier would sell the watercraft in the United States or had agreed to design the fuel tanks in compliance with United States regulations, Dow Canada's contacts with California would be attenuated at best and insufficient to establish personal jurisdiction.

3

DISCUSSION

Bombardier contends the trial court erred. It claims Dow Canada's knowledge that its products would eventually enter the stream of commerce in California was sufficient to establish jurisdiction. It also claims the trial court erred in sustaining the objections against Biron's and Daunais's declarations.

In *Dow Chemical Canada ULC v. Superior Court* (2011) 202 Cal.App.4th 170 (*Fandino*), our colleagues in the Second Appellate District faced the same issue we face: whether Dow Canada was subject to California jurisdiction because its predecessors were aware that their fuel tanks and fuel tank filler necks, installed in Bombardier watercraft manufactured in Canada, would be sold in California. The Court of Appeal and the California Supreme Court initially had denied Dow Canada any relief, but the United States Supreme Court vacated the judgment and remanded the matter to the Court of Appeal for further consideration in light of the high court's most recent ruling on personal jurisdiction, *J. McIntyre Machinery, Ltd. v. Nicastro* (2011) 564 U.S. __ [180 L.Ed.2d 765 (*J. McIntyre*). (*Fandino, supra*, 202 Cal.App.4th at p. 174.) Relying on *J. McIntyre*, the Court of Appeal concluded Dow Canada was "not subject to personal jurisdiction in California because it did not purposefully avail itself of the privilege of conducting activities within the forum state." (*Fandino, supra,* at p. 173.)

We reach the same result our colleagues did in *Fandino*.

" 'California courts may exercise personal jurisdiction on any basis consistent with the Constitution of California and the United States. (Code Civ. Proc., § 410.10.) The exercise of jurisdiction over a nonresident defendant comports with these Constitutions "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " ([*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*)],

4

quoting *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102] (*Internat. Shoe*).)' (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*).)

" 'The concept of minimum contacts . . . requires states to observe certain territorial limits on their sovereignty. It "ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." ' (*Vons*, *supra*, 14 Cal.4th at p. 445, quoting *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 292 [62 L.Ed.2d 490, 498] (*World-Wide Volkswagen*).) To do so, the minimum contacts test asks 'whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.' (*Kulko v. California Superior Court* (1978) 436 U.S. 84, 92 [56 L.Ed.2d 132, 141], quoting *Internat. Shoe*, *supra*, 326 U.S. at pp. 316–317.) The test 'is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.' (*Kulko*, at p. 92.)" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061 (*Snowney*).)

Under the minimum contacts test, "[p]ersonal jurisdiction may be either general or specific." (*Vons, supra*, 14 Cal.4th at p. 445.) Because Bombardier does not claim general jurisdiction, we consider only whether specific jurisdiction exists here.

" 'When determining whether specific jurisdiction exists, courts consider the " 'relationship among the defendant, the forum, and the litigation.' " (*Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414 [80 L.Ed.2d 404, 411], quoting *Shaffer v. Heitner* (1977) 433 U.S. 186, 204 [53 L.Ed.2d 683, 698.].) A court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" (*Vons*, *supra*, 14 Cal.4th at p. 446); (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum' " (*ibid.*, quoting *Helicopteros*, *supra*, 466 U.S. at p. 414); and (3) " 'the assertion of personal jurisdiction would comport with "fair play

and substantial justice" ' " (*Vons*, *supra*, 14 Cal.4th at p. 447, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, [476] [85 L.Ed.2d 528, 535] [(*Burger King*)].)' (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.)" (*Snowney, supra*, 35 Cal.4th at p. 1062.)

The United States Supreme Court has wrestled with the scope of the "purposeful availment" requirement. Plurality and concurring opinions in *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102 [94 L.Ed.2d 92] (*Asahi*) offered competing views on whether the foreign defendant created minimum contacts with the forum state simply by foreseeing that its products could reach the forum state when they entered into the stream of commerce. More recently, in *J. McIntyre*, plurality and concurring opinions again could not agree on the extent to which the foreign defendant's foreseeability could establish minimum contacts.

Bombardier and Dow Canada disagree on the effect of *J. McIntyre*. We conclude both the plurality and the concurring opinions in *J. McIntyre* agree that mere foreseeability, at least where products are not sold in a state as part of the regular and anticipated flow of commerce into that state, is not enough to establish minimum contacts with the forum state. Beyond that, the opinions do not significantly add to the state of personal jurisdiction jurisprudence, and we thus rely on existing precedent to define and apply the purposeful availment prong of the minimum contacts test.

In *Asahi*, a California plaintiff sued in state court the Taiwanese manufacturer of a motorcycle tire tube in a products liability action. The Taiwanese manufacturer in turn filed a cross-complaint for indemnity against Asahi, the Japanese manufacturer of the tube's valve assembly. Asahi moved to quash summons on the basis of lack of jurisdiction. (*Asahi, supra*, 480 U.S. at pp. 105-106.) The high court concluded Asahi lacked minimum contacts with California. (*Id*. at p. 108.)

Writing for the four-member plurality, Justice O'Connor rejected the notion that "mere foreseeability or awareness was a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum State while still in the

6

stream of commerce. [Citation.]" (*Asahi, supra*, 480 U.S. at p. 111 (plur. opn. of O'Connor, J.).) She and three other justices concluded "[t]he 'substantial connection' [citations] between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. [Citations.] The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the project for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." (*Id*., at p. 112 (plur. opn. of O'Connor, J.), italics omitted.)

According to Justice O'Connor, even assuming Asahi knew some of the valves it sold to the Taiwanese company would be incorporated into tire tubes sold in California, the Taiwanese company had "not demonstrated any action by Asahi to purposefully avail itself of the California market. Asahi does not do business in California. It has no office, agents, employees, or property in California. It does not advertise or otherwise solicit business in California. It did not create, control or employ the distribution system that brought its valves to California. [Citation.] There is no evidence that Asahi designed its product in anticipation of sales in California. [Citation.] On the basis of these facts, the exertion of personal jurisdiction over Asahi by the Superior Court of California exceeds the limits of due process." (*Asahi, supra*, 480 U.S. at pp. 112-113 (plur. opn. of O'Connor, J.).)

Justice Brennan, joined by three justices in his concurrence, rejected Justice O'Connor's view of the stream of commerce theory. In his opinion, "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant

7

in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit. A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State."[1] (*Asahi, supra*, 480 U.S. at p. 117 (conc. opn. of Brennan, J.).)

The Supreme Court encountered the issue again in *J. McIntyre*. In that case, the plaintiff was injured using a metal-shearing machine that had been manufactured by J. McIntyre in England, and he sued in New Jersey state court. J. McIntyre was incorporated and operated in England. It sold its machines to an independent United States distributor who agreed to sell the machines in the United States. However, J. McIntyre did not sell its machines to United States buyers, nor did it market in or ship goods to New Jersey. J McIntyre officials attended annual conventions in the United States, but never in New Jersey. No more than four machines it manufactured ended up in New Jersey. However, J. McIntyre held both United States and European patents on its technology, and the distributor structured its advertising and sales efforts in accordance with J. McIntyre's direction and guidance. (*J. McIntyre, supra*, 546 U.S. at p. ___ [180 L.Ed.2d at pp. 772-773].)

---

[1]     Justice Brennan nonetheless concurred in the plurality's judgment, concluding the exercise of personal jurisdiction over Asahi "would not comport with 'fair play and substantial justice.' [Citation.]" (*Asahi, supra*, 480 U.S. at p. 116 (conc. opn. of Brennan, J.).)

8

The New Jersey Supreme Court held New Jersey could exercise jurisdiction. It ruled the state could "exercise jurisdiction over a foreign manufacturer of a product so long as the manufacturer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.' [Citation.]" (*J. McIntyre, supra*, 546 U.S. at p. ___ [180 L.Ed.2d at p. 772].)

The United States Supreme Court reversed, concluding J. McIntyre lacked minimum contacts with New Jersey. Writing for a four-member plurality, Justice Kennedy sided with Justice O'Connor in requiring the minimum contacts with the forum state to come about by the defendant's actions purposefully directed toward the forum state: "This Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." (*J. McIntyre, supra*, 546 U.S. at p. ___ [180 L.Ed.2d at p. 776] (plur. opn. of Kennedy, J.).) "[T]he authority to subject a defendant to judgment depends on purposeful availment, consistent with Justice O'Connor's opinion in *Asahi* . . . ." (*J. McIntyre, supra,* at p. 777 (plur. opn. of Kennedy, J.).)

Justice Breyer, writing for himself and Justice Alito, concurred in the result. He did so, however, based only on existing precedent. None of those precedents, he stated, found that a single isolated sale to a customer who takes an accident-causing product to a different state was sufficient contact to assert jurisdiction. That scenario would not pass muster under either Justice O'Connor's or Justice Brennan's formulations announced in their *Asahi* opinions. The facts showed "no 'regular . . . flow' or 'regular course' of sales in New Jersey [the Brennan, J., approach]; and there is no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else [the O'Connor, J., approach]." (*J. McIntyre, supra*, 546 U.S. at p. ___ [180 L.Ed.2d at p. 779] (conc. opn. of Breyer, J.).)

9

Because the case's factual record left open many questions, Justice Breyer believed the case was "an unsuitable vehicle for making broad pronouncements that refashion basic jurisdictional rules." (*J. McIntyre, supra*, 546 U.S. at p. ___ [180 L.Ed.2d at p. 780] (conc. opn. of Breyer, J.).)  He wrote he was adhering strictly to the court's precedents and the facts of the case:  "I would not go further."  (*Id*. at pp. 780, 782.)

Nevertheless, Justice Breyer went on to explain why he disagreed with the approaches taken by both the plurality and by the New Jersey Supreme Court.  He disagreed with the plurality opinion because he felt it was an attempt to establish strict rules limiting jurisdiction without taking account of recent changes in globalized and electronic commerce, issues this case did not present.  (*J. McIntyre, supra*, 546 U.S. at p. ___ [180 L.Ed.2d at p. 780] (conc. opn. of Breyer, J.).)

However, he also disagreed with the approach adopted by the New Jersey Supreme Court that a manufacturer is subject to jurisdiction for a products-liability action because it should have foreseen its products might be sold anywhere in the United States. A test based merely on foreseeability would rest jurisdiction "upon no more than the occurrence of a product-based accident in the forum State," a notion the high court has rejected.  (*J. McIntyre, supra,* 546 U.S. at p. ___ [180 L.Ed.2d at p. 781] (conc. opn. of Breyer, J.); see *World-Wide Volkswagen, supra*, 444 U.S. at p. 296.)

Such an automatic rule also could not be reconciled with the constitutional demand for minimum contacts and purposeful availment:  "A rule like the New Jersey Supreme Court's would permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products (made anywhere in the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue.  What might appear fair in the case of a large manufacturer which specifically seeks, or expects, an equal-sized distributor to sell its product in a distant State might seem unfair in the case of a small manufacturer (say, an Appalachian

10

potter) who sells his product (cups and saucers) exclusively to a large distributor, who resells a single item (a coffee mug) to a buyer from a distant State (Hawaii). I know too little about the range of these or in-between possibilities to abandon in favor of the more absolute rule what has previously been this Court's less absolute approach. [¶] Further, the fact that the defendant is a foreign, rather than a domestic, manufacturer makes the basic fairness of an absolute rule yet more uncertain. I am again less certain than is the New Jersey Supreme Court that the nature of international commerce has changed so significantly as to require a new approach to personal jurisdiction." (*J. McIntyre, supra*, 546 U.S. at p. ___ [80 L.Ed.2d at p. 781] (conc. opn. of Breyer, J.).)

In short, Justice Breyer "would not work such a change to the law in the way either the plurality or the New Jersey Supreme Court suggests without a better understanding of the relevant contemporary commercial circumstances." (*J. McIntyre, supra*, 546 U.S. at p. ___ [180 L.Ed.2d at p. 782] (conc. opn. of Breyer, J.).)

*J. McIntyre* thus cleared the air only slightly. Six justices of the United States Supreme Court now hold mere foreseeability that a product may enter a foreign state is insufficient to establish minimum contacts with a forum state. An inquiry into a foreign defendant's purposeful availment of the forum state's benefits must find more than merely entering a product into the stream of commerce with knowledge the product might enter the forum state. But the high court has not agreed on exactly what more besides foreseeability must be shown; for example, whether the defendant's products knowingly and regularly flowed into the forum state or were part of a regular course of sale in the forum state (the Brennan, J., approach); or whether there must be something more than that, such as special state-related design, advertising, advice, or marketing (the O'Connor, J., approach).

We thus rely on the California Supreme Court's most recent description of the purposeful availment requirement as our guide to resolving this case, understood in light of *J. McIntyre's* holdings that mere foreseeability is insufficient to establish minimum

11

contacts, and that the existence of jurisdiction is determined based on an individualized assessment of the facts. " ' "The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on" [its] contacts with the forum.' (*Pavlovich*, *supra*, 29 Cal.4th at p. 269, quoting *U.S. v. Swiss American Bank, Ltd.* (1st Cir. 2001) 274 F.3d 610, 623–624.) Thus, purposeful availment occurs where a nonresident defendant ' "purposefully direct[s]" [its] activities at residents of the forum' (*Burger King*, *supra*, 471 U.S. at p. 472), ' "purposefully derive[s] benefit" from' its activities in the forum (*id.* at p. 473), 'create[s] a "substantial connection" with the forum' (*id.* at p. 475), ' "deliberately" has engaged in significant activities within' the forum (*id.* at pp. 475–476), or 'has created "continuing obligations" between [itself] and residents of the forum' (*id.* at p. 476). By limiting the scope of a forum's jurisdiction in this manner, the ' "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . .' (*Id*. at p. 475.) Instead, the defendant will only be subject to personal jurisdiction if ' "it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state." ' (*Pavlovich*, at p. 269, quoting *World-Wide Volkswagen*, *supra*, 444 U.S. at p. 297.)" (*Snowney, supra*, 35 Cal.4th at pp. 1062-1063.)

"Where, as here, ' "no conflict in the evidence exists . . . the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." ' (*Vons*, at p. 449.)" (*Snowney, supra,* 35 Cal.4th at p. 1062.)

Applying this test to the undisputed facts before us, we conclude Dow Canada lacks the minimum contacts with California that would subject it to California's jurisdiction. Dow Canada and its predecessors did not purposefully direct their activities

toward the residents of California. They created no substantial connection with California or continuing obligations between them and California. They did not deliberately engage in any significant activities within California. Because of their lack of contacts with California, they could not reasonably expect to be subject to California's jurisdiction.

All of Dow Canada's contacts were with Canada. At all relevant times, Union Carbide Canada manufactured the fuel tanks exclusively in Canada. It sold the fuel tanks to Bombardier exclusively in Canada pursuant to purchase orders made in Canada. Bombardier manufactured its personal watercraft in Canada.

Union Carbide Canada, including Wedco, never had a registered agent in California, never qualified to do business in California, never manufactured any products in California, never had any employees, offices, or facilities in California, and never advertised or sold any personal watercraft fuel tanks or fuel tank filler necks in California.

Dow Canada is a Canadian corporation with its principal place of business in Canada. It has never had an agent for service of process in California, never qualified to do business in California, never manufactured any products in California, never had any employees, officers or other facilities in California, and never advertised or sold products in California or to customers in California.

At oral argument, Bombardier asserted this case was governed by *People ex rel. Harris v. Native Wholesale Supply Co.* (2011) 196 Cal.App.4th 357 (*Harris*), but that case is distinguishable. In *Harris*, this court determined a tribal-chartered corporation headquartered on an Indian reservation in New York was subject to California's personal jurisdiction. The corporation since 2003 had sold over 300 million cigarettes manufactured in Canada to an Indian tribe located near Fresno in violation of state law. (*Id.* at pp. 362-363.) We concluded the corporation had purposefully availed itself of California law and benefits by placing goods in the stream of commerce with an

13

expectation they would be sold in California. The corporation had intentionally brought goods into California. (*Id*. at pp. 364-365.) The same cannot be said of Dow Canada. Unlike the tribal corporation in *Harris*, Dow Canada sold nothing to any person or entity in California.

Bombardier claims Dow Canada knew when it contracted to provide the fuel tanks in the 1990's that they would be used in personal watercraft that would be sold in California. That may be so, but it would still not provide sufficient minimum contacts with California. One principle a majority of the Unites States Supreme Court has agreed upon is that mere knowledge, without something more, is insufficient to establish jurisdiction in a forum state.

In an attempt to prove that "something more," Bombardier asks us to make findings of fact under our discretionary authority provided by Code of Civil Procedure section 909 or to take judicial notice of evidence. It claims *J. McIntyre* stands for the proposition that "an intended regular flow of a significant volume of a foreign manufacturer's product into a particular forum state will trigger personal jurisdiction." To establish Dow Canada's fuel tanks were such a flow, Bombardier seeks to admit the declarations which the trial court refused to admit, as well as evidence derived from discovery responses and deposition testimony obtained *after* the trial court quashed service of summons, to have us establish two factual findings: (1) Dow Canada knew in the 1990's the fuel tanks would be installed in personal watercraft to be sold and used in California; and (2) from 1995-1998, more than 43,000 Bombardier personal watercrafts containing Dow Canada fuel tanks were sold to California residents.

We deny the requests to admit the declarations and other evidence and to make factual findings. To admit the declarations, we would have to determine the trial court abused its discretion when it refused to admit them. The court, however, did not abuse its discretion. Out-of-state declarations that do not state they were made "under penalty of perjury under the laws of the State of California" (Code Civ. Proc., § 2015.5) are not

14

deemed sufficiently reliable to be admitted into evidence. (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 610-611.) We will not overturn the trial court's decision not to admit the declarations.

We also will not consider the additional evidence Bombardier obtained after the trial court quashed service. All of the additional evidence Bombardier seeks to introduce could have been obtained before the trial court ruled on the motion to quash service, as it concerns actions that occurred in the 1990's. Bombardier's decision not to present that evidence before the trial court is not a sufficient ground to justify our reviewing it here.

Bombardier implies the evidence was not relevant until *J. McIntyre* was decided, holding, in Bombardier's opinion, that an intended regular flow of business into the forum state is sufficient to establish minimum contacts. As already explained, however, *J. McIntyre* did not so hold. Certainly the plurality opinion reached no such conclusion, and Justice Breyer's concurring opinion refused to decide the issue, as the facts in that case did not concern a regular flow of business into the forum state.

We further deny the request to make factual findings. " 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule [8.252(b)] of the California Rules of Court, the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances, no such findings should be made.* [Citation.]' [Citations.]" (*In re Zeth S*. (2003) 31 Cal.4th 396, 405, original italics.) Even when exceptional circumstances exist, appellate courts still are not to exercise their authority to make factual findings except where to do so will result in the litigation's termination, either by affirming the judgment or reversing and directing judgment be entered in favor of the appellant. (*Tupman v. Haberkern* (1929) 208 Cal. 256, 270.)

Here, no exceptional circumstances exist to justify making factual determinations. As just stated, the trial court did not abuse its discretion in refusing to admit the out-of-

15

state declarations and the additional evidence could have been submitted timely but was not.

Furthermore, making the requested findings would not end this litigation. Rather, it would allow the litigation to proceed based on facts never placed before the trial court. We will not overrule the trial court's factfinding responsibility and authority and reinstate litigation where it was a party who failed to bring the facts to the trial court's attention in the first instance.

Even if we were to consider the evidence Bombardier seeks to have us admit, it would not change our decision. The facts of this case are more akin to the facts in *Asahi*, where a majority of the court determined jurisdiction did not exist. Justice O'Connor reached that conclusion because Asahi lacked minimum contacts by doing nothing more than sell its product to the Taiwanese manufacturer (*Asahi, supra*, 480 U.S. at pp. 112-113), and Justice Brennan reached the same conclusion because it would be unfair to hale a foreign manufacturer of a part sold in a foreign country into a California court to resolve a claim for indemnity. (*Id*. at pp. 116-119.) These same principles apply here. It is unfair to hale Dow Canada into California to resolve a claim for indemnity between it and another Canadian corporation.

Finally, we note Bombardier is not left without an avenue for relief. Bombardier has initiated litigation against Dow Canada in Quebec, Canada, that addresses the same claims it sought to raise in this action, including a claim for indemnification.

DISPOSITION

The order quashing service of process is affirmed. Costs on appeal are awarded to Dow Canada. (Cal. Rules of Court, rule 8.278(a).)

                                              NICHOLSON    , Acting P. J.

We concur:

         ROBIE        , J.

16

_____HOCH_____, J.