Filed 10/28/24  Gordon v. Cool Springs Financial Group CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MATTHEW GORDON, | D082117 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00023508-CU-BT-CTL) |
| COOL SPRINGS FINANCIAL GROUP, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Carolyn Caietti, Judge.  Affirmed.

Metsch & Mason, Michael J. Mason and Paul S. Metsch; Finch, Thornton & Baird and Michael J. Mason, for Plaintiff and Appellant.

Locke Lord and Daniel A. Solitro, for Defendant and Respondent.

## INTRODUCTION

Matthew Gordon appeals an order granting a motion to quash service of summons for lack of personal jurisdiction.  The trial court determined it did not have personal jurisdiction over Cool Springs Financial Group, LLC, a

limited liability company registered in Delaware and headquartered in Tennessee. We agree with the trial court. Therefore, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Cool Springs is a limited liability company organized in Delaware. Its principal place of business is in Tennessee. Cool Springs is not licensed to do business in California. It has no offices in California. It owns no property in California. Cool Springs has one employee who resides in California, but that individual works remotely. Cool Springs' only alleged California connection is through a purported relationship with defendant Richard Wira, who lives in California.

Since 2013, Wira has acted as Gordon's life insurance agent. In late 2016, Wira recommended to Gordon an alternative method of purchasing an Accordia life insurance policy through the Cool Springs' Premium Finance strategy that involved financing by Wintrust Life Finance. Thus, Cool Springs would be the plan administrator, not the lender. Wira met with Gordon and presented him with a letter and brochure detailing the Cool Springs finance strategy. The letter, however, was not signed, written, reviewed, or authorized by Cool Springs. Cool Springs did not see the letter until 2022 after the dispute in the pending lawsuit arose. The "Introduction" in the brochure was cut and pasted from a 2002 Cool Springs brochure. Cool Springs did not authorize Wira, or anyone else, to use information from the 2002 brochure.

In 2017, at the request of Wira, Cool Springs prepared a "Cool Springs Financial Strategy" chart.[1] To finalize Gordon's purchase of the Accordia

---

[1] Cool Springs contends Wira has never been one of its employees. Nonetheless, in a 2017 e-mail, Wira is referred to as an agent of Cool Springs. In February 2018, Wira became a director at Cool Springs. That position, however, is as an independent contractor of Cool Springs and not an

2

Life policy, John F. McCarthy, one of Gordon's life insurance agents, working with Wira, signed the chart. Cool Springs was unaware that the chart was signed by McCarthy, who was never an employee of Cool Springs. Additionally, Cool Springs was unaware that the financial strategy chart would be used as a purported agreement between Wira and Gordon. Gordon alleges that at some point later, Wira prepared a fraudulent chart, removing McCarthy's signature and adding his own. Gordon argues that the letter and brochure Wira provided misrepresented the Cool Springs financial strategy. The primary alleged misrepresentations being: (1) real property could be used as the collateral; (2) each year the past collateral would be returned, and "new" collateral would be posted; and (3) other than minimal interest payments in year two, Gordon would never write a check to pay out of pocket. Gordon claims these representations convinced him to purchase the Accordia life insurance policy in September of 2017. However, all the alleged misrepresentations to Gordon in the Complaint—both before and after his acquisition of the Accordia life insurance policy—were made by either Wira or McCarthy, both of whom Gordon acknowledges were his life insurance agents.

In 2021, Wira urged Gordon to forfeit the Accordia life insurance policy and buy a new Penn life insurance policy. Gordon ultimately forfeited the Accordia life insurance policy after deciding not to post the required collateral for the premium payments.

In 2022, Gordon filed an unverified complaint alleging claims for: (1) breach of fiduciary duty (against only defendant Richard Wira); (2) promissory fraud; (3) intentional misrepresentation; (4) fraudulent

---

employee. Additionally, there is no evidence in the record that Wira acted as Cool Springs representative or was instructed by Cool Springs to do so.

concealment; (5) negligent misrepresentation; (6) negligence; and
(7) accounting. Then, Cool Springs filed its motion to quash service of
summons. After the initial hearing on the motion, the trial court issued a
minute order, continuing the hearing for the limited purpose of conducting
jurisdictional discovery of the issue of specific personal jurisdiction over Cool
Springs. The court also ordered supplemental briefing on the motion to
quash.

The parties conducted jurisdictional discovery pursuant to the court's
order. Cool Springs filed its supplemental memorandum of points and
authorities in support of motion to quash service of summons along with the
supplemental declaration from its Chief Operating Officer, Kevin Wang.
Gordon filed his supplemental opposition supported by a declaration from his
counsel of record, Michael J. Mason. Finally, Cool Springs filed its reply.

After entertaining oral argument, the court entered judgment in favor
of Cool Springs. Gordon timely filed a notice of appeal.

DISCUSSION

A. *Relevant Legal Principles*

California's long-arm statute authorizes California courts to exercise
jurisdiction over nonresidents on any basis that is consistent with the
Federal or State Constitution. (Code Civ. Proc., § 410.10.) A state court's
assertion of personal jurisdiction must comport with the federal due process
clause. (*Vons Companies, Inc. v. Seabest Foods, Inc*. (1996) 14 Cal.4th 434,
444–445.) Thus, to meet the requirements of the due process clause, state
courts can only assert personal jurisdiction over a nonresident defendant, a
defendant who has not been served with process within the state, if two
factors are satisfied. First, the nonresident defendant must have certain
minimum contacts with the state. Second, the California court asserting

4

jurisdiction over the nonresident defendant would not violate " ' "traditional notions of fair play and substantial justice." ' " (*Id.* at p. 444, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

When deciding if a nonresident defendant meets the minimum contacts standard, the court considers whether the quality and nature of the defendant's activity is such that it would be reasonable and fair to require the defendant to defend themself against a lawsuit in that state. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 (*Pavlovich*).) Minimum contacts determinations are fact specific. (*Ibid.*)

For purposes of the minimum contacts analysis, there are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062.) A California court has general jurisdiction over an individual defendant if the individual defendant is domiciled in that state. (*Bristol-Meyers Squibb Co. v. Superior Court* (2017) 582 U.S. 255, 262 (*Bristol-Meyers*).) Therefore, a court has general jurisdiction over a corporation if the corporate defendant is considered "at home" in that state. (*Ibid.*) If general jurisdiction exists, the court may hear any claim against that defendant even if the activities that gave rise to the claim occurred in a different state. (*Ibid.*) However, Gordon does not claim the superior court had general jurisdiction over Cool Springs. Accordingly, we focus on whether the exercise of specific jurisdiction over Cool Springs would comport with due process.

For a state court to have specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum state. (*Bristol-Meyers, supra,* 582 U.S. at p. 262.) To meet this standard, the defendant must purposefully avail themselves to the forum state meaning that there must be a connection between the forum state and the underlying controversy,

principally, an activity or occurrence that takes place in the forum state and is therefore subject to the state's regulation. (*Ibid*.) Thus, specific jurisdiction is limited to adjudicating issues that are derived from or relate to the controversy that establishes jurisdiction. (*Ibid*.)

Courts may exercise specific jurisdiction over a nonresident defendant who has not been served with process within the forum state when three requirements are met. "First, the defendant must have purposefully availed himself of the privilege of conducting activities in this state, thereby invoking the benefits and protections of California's laws. Second, the claim or controversy must relate to or arise out of the defendant's forum-related contacts. Third, the exercise of jurisdiction must be fair and reasonable and should not offend notions of fair play and substantial justice." (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 392.)

When an out-of-state defendant moves to quash service for lack of personal jurisdiction, it is the plaintiff's burden to establish the first two elements by a preponderance of the evidence. (*Jacqueline B. v. Rawls Law Group, P.C.* (2021) 68 Cal.App.5th 243, 253 (*Jacqueline B.*).) If the plaintiff meets its burden for the first two elements, then the burden shifts to the out-of-state defendant to convince the court that asserting personal jurisdiction would not comport with fair play and substantial justice. (*Ibid*.) To prove its burden, the plaintiff must do more than merely allege jurisdictional facts. (*In re Automobile Cases I & II* (2005) 135 Cal.App.4th 100, 110 (*In re Automobile Cases I & II*).) The plaintiff must provide affidavits and other authenticated documents with specific evidentiary facts that are sufficient to permit the court to form an independent conclusion and find that the forum state can exercise jurisdiction over the defendant. (*Ibid*.)

6

In reviewing a trial court's dismissal for lack of personal jurisdiction, we independently review the court's legal rulings and its application of the law to its factual findings but review those factual findings only for substantial evidence. (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 251.)

B. *Gordon Failed to Establish Purposeful Availment*

Gordon argues that Cool Springs purposefully availed itself to California's benefits due to two contacts that Cool Springs had with Wira, a San Diego based insurance agent.[2] According to Gordon, the purposeful availment element was satisfied because of e-mail correspondence between Wira and Cool Springs employees as well as the financial strategy chart that Cool Springs created, which Gordon alleges show "a pattern of Cool Springs working directly with and through Wira for its clients . . . in San Diego." It is not disputed that these contacts between Wira and Cool Spring occurred. However, as we explain *post*, they fall short of establishing that Cool Springs purposefully availed itself of the privilege of conducting activities in California.

With respect to Gordon's first argument about e-mails between Cool Springs and Wira, Gordon relies on a single e-mail chain from 2017,

2    Gordon's opening and reply briefs rely almost entirely on unauthenticated evidence that cannot form the basis for finding personal jurisdiction. (*In re Automobile Cases I & II*, *supra*, 135 Cal.App.4th at p. 110.) Gordon's complaint as well as exhibits 3-7 of the Gordon declaration and the entirety of the Mason declaration are unverified. Cool Springs challenged the admissibility of the exhibits attached to the Gordon and Mason declarations in its reply, supplemental brief in support of its motion to quash service of summons, and supplemental reply. The evidentiary challenge was also raised during the hearing on the motion. We acknowledge Cool Spring's objection to the evidence but ultimately conclude that Gordon's reliance on unauthenticated documents is of no consequence as the evidence provided in the record is not sufficient to permit the trial court to exercise personal jurisdiction over Cool Springs.

7

containing two e-mails dated August 21, 2017, and September 5, 2017, between Nicole Watson of Cool Springs and Wira. In this e-mail exchange, Wira was asking Cool Springs if he could use concepts from the Cool Springs website to "build out a website" for his own, independent company, Equote. In response to Wira's inquiry, Watson responded that Wira may use the website "as inspiration" but she "can't grant access to it." These two e-mails do not provide evidence that Cool Springs has purposefully availed itself to the forum. The e-mail exchange demonstrates Wira reaching out to and soliciting information from Cool Springs in Tennessee. We read nothing in this e-mail that even hints as Cool Springs seeking Wira's help to generate business in California. Moreover, the e-mail does not discuss whatsoever the Accordia life insurance policy purchased by Gordon. This standalone correspondence is not relevant to the allegations in the complaint and certainly does not demonstrate a connection between Cool Springs and California.

Gordon also relies on dozens of e-mails between Cool Springs, Wira, and Gordon, all of which are dated from the year 2020 or later.[3] These e-mails were written at least three years after the alleged fraud in 2017 that Gordon claims to have relied on to purchase the Accordia life insurance policy. Even if these e-mails were sufficient to prove purposeful availment in 2020, they cannot support Gordon's claim here that Cool Springs purposely availed itself of the privilege of conducting activities in California in 2017. In other words, these e-mails sent three years after the alleged

---

[3]    Gordon fails to cite to specific e-mails that are dated from 2020 or later that show purposeful availment. Rather Gordon references generally "the dozens of e-mails attached to the Supplemental Mason Declaration and discussed in the accompanying Supplemental Opposition Memorandum of Points and Authorities."

misrepresentations occurred are insufficient to satisfy the purposeful availment element. Indeed, these 2020 communications related to Cool Springs' performance of routine renewal services for the benefit of its industry partner Wintrust and other independent parties unaffiliated with Cool Springs. That is, Cool Springs was acting as a vendor on behalf of its industry partners relating to the renewal process, not on behalf or for the benefit of Gordon or Wira who reside in California. Therefore, the 2020 e-mails do not show that Cool Springs was purposefully availing itself of California's benefits.

With respect to Gordon's second argument regarding the financial strategy chart that Cool Springs provided to Wira, the financial strategy chart also does not prove that Cool Springs purposefully availed itself of the privilege of conducting activities in California. The financial strategy chart was solicited from Cool Springs by Wira without any indication that it would be used as a purported agreement between Wira and Gordon. Cool Springs did not solicit anything from Wira in California, and Cool Springs never entered into any contract with either Wira or Gordon relating to the Accordia life insurance policy. Moreover, Cool Springs was not aware that the chart was purportedly signed by Jack McCarthy—a colleague of Wira's and an agent for Gordon, not an employee of Cool Springs. Additionally, there is no evidence in the record that Cool Springs knew Wira intended to have Gordon sign the chart. Therefore, the financial strategy chart does not support Gordon's argument that he satisfied his burden in establishing the purposeful availment element.

Additionally, Gordon claims that Wira is an ostensible agent of Cool Springs and such agency proves Cool Springs purposefully availed itself to California. An agent is a person who represents a principal in dealings with

9

third parties. (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1074.) There are two types of agency relationships: actual and ostensible. (*Ibid*.) A relationship of actual agency arises when the principal indicates that the agent is to act for them then the agent must agree to act on the principal's behalf and be subject to the principal's control. (*Franklin v. Santa Barbara Cottage Hospital* (2022) 82 Cal.App5th 395, 403.) Wira has never been an employee of Cool Springs and was not authorized to act on behalf of Cool Springs or otherwise act as its representative in any way. Thus, Wira was not an actual agent of Cool Springs. An ostensible agency arises when the third party reasonably believes that the agent has the authority to act on the principal's behalf based on the principal's conduct. (*Rogers*, at p. 1074.) Ostensible agency requires the principal to intentionally communicate the agency relationship to the third party or to negligently cause the third party to believe that there is an agency relationship. (*Howell v. Courtesy Chevrolet, Inc.* (1971) 16 Cal.App.3d 391, 401.) However, there is no evidence that Cool Springs, intentionally or negligently, informed Gordon that Wira acted as its agent in relation to Wira's underlying wrongful conduct alleged in the Complaint.

To prove ostensible agency, Gordon relies on a 2017 e-mail exchange in which Natalie Watson, an employee of Cool Springs, refers to Wira as an agent. This standalone correspondence between Wira and Cool Springs does not prove that Wira was an agent. The subject of the e-mail exchange is about Cool Spring's website, not the Accordia life insurance policy or the allegations that gave rise to the underlying Complaint. Additionally, because Gordon was not a recipient of this e-mail, there is no indication in the record that Cool Springs intended the e-mail as a representation to Gordon, based on which he might conclude Wira was Cool Springs' agent in 2017.

10

Gordon also argues that Wira becoming a director at Cool Springs in 2018 and Cool Springs posting Wira's photo on its website in 2021 further proves that Wira was an agent of Cool Springs. Gordon claims that "by naming Wira as one of its 'Directors,' Cool Springs is leading the world, including [Gordon] to believe . . . that Wira is an agent of Cool Springs." However, Wira was made a director in 2018 and his photo was posted on their website in 2021 which happened, respectively, one and four years after Gordon had purchased the Accordia life insurance policy in 2017. As a director, Wira was an independent contractor and was not authorized to act on behalf of Cool Springs or otherwise act as its representative in any way. Even if Wira being named "Director" and having his photograph posted on Cool Spring's website would lead one to believe that Wira was an agent of Cool Springs, there is no evidence in the record that supports the conclusion that Wira was an agent of Cool Springs at the time the alleged misrepresentations were made. Simply put, we find no evidence that Wira acted as an agent of Cool Springs in California at the time the alleged misrepresentations and fraud occurred. Therefore, the trial court was correct to conclude, "Wira did not act on behalf of Cool Springs at any time."

Based on the record, there is no evidence that Cool Springs "deliberately engage[d] in any significant activities within California" necessary to find it purposefully availed itself of the forum for specific jurisdiction. (See *Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 604.) Cool Springs' minimal and insignificant contacts with California only occurred because Wira, a third party residing in California, solicited Cool Springs' help, which is not sufficient for minimum contacts because the relationship with the forum state must arise out of contacts that the defendant itself created with the

11

forum state.  (*Walden v. Fiore* (2014) 571 U.S. 277, 284.)  Cool Springs, therefore, cannot be hauled into a California court based on these contacts that resulted from unilateral decisions made by a third party.  (*See Pavlovich*, *supra*, 29 Cal.4th at p. 269; *Bombardier*, at p. 604.)  Because Gordon failed to satisfy his burden and make a prima facie showing of purposeful availment for the purposes of satisfying specific jurisdiction, we need not consider any of the other elements of specific personal jurisdiction.

## DISPOSITION

The order is affirmed.  Cool Springs is entitled to its costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.