Filed 9/28/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GOLDEN DOOR PROPERTIES, LLC, Plaintiff and Respondent, v. COUNTY OF SAN DIEGO, Defendant and Appellant. | D072406 (Super. Ct. No. 37-2016-00037402-CU-TT-CTL) |
| SIERRA CLUB, LLC, Plaintiff and Respondent, v. COUNTY OF SAN DIEGO, Defendant and Appellant. | D072433 (Super. Ct. No. 37-2012-00101054-CU-TT-CTL) |

CONSOLIDATED APPEALS from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge. Affirmed.


Thomas E. Montgomery, County Counsel, and Claudia Gacitua Silva, Assistant County Counsel, for Defendants and Appellants.

Chatten-Brown & Carstens, Jan Chatten-Brown, and Joshua Randall Chatten-Brown for Plaintiff and Respondent Sierra Club.

Latham & Watkins, Andrew D. Yancey, Samantha K. Seikkula and Christopher W. Garrett for Plaintiff and Respondent Golden Door Properties, LLC.

I

INTRODUCTION

The County of San Diego (the County) challenges a peremptory writ of mandate and injunction, along with a judgment directing it to set aside and vacate the "2016 Climate Change Analysis Guidance Recommended Content and Format for Climate Change Analysis Reports in Support of CEQA Document" (the 2016 Guidance Document or Guidance Document) and prohibiting it from using the Guidance Document or the "Efficiency Metric" defined in it as part of its California Environmental Quality Act (CEQA) review of greenhouse gas (GHG) impacts for development proposals in unincorporated areas of San Diego County.  The County contends the matter is not justiciable because it is not ripe and the Guidance Document does not establish a threshold of significance for use in environmental review, nor does its use violate CEQA. The County further contends its separate development of a Climate Action Plan (CAP) and threshold of significance is evidence the Guidance Document does not violate a previous writ or use piecemeal environmental review.  We disagree with the County and affirm the trial court writ and judgment in their entirety.

II

BACKGROUND

A. *Legal Principles*

In June 2005, Governor Arnold Schwarzenegger signed Executive Order S-3-05, establishing GHG reduction targets to 2000 levels by 2010, to 1990 levels by 2020, and to 80 percent below 1990 levels by 2050. (Sen. Rules Com., Off. of Sen. Floor Analyses, Sen. Bill No. 32 (2015-2016 Reg. Sess.) as amended Aug. 19, 2016, p. 4, no. 3.) The following year, California Assembly Bill No. 32 (A.B. 32), California's Global Warming Solutions Act of 2006, established a statewide goal of achieving substantial reduction in the emission of gases contributing to global warming, including the reduction of GHG emissions to 1990 levels by 2020. (Health & Saf. Code, §§ 38500 et seq., 38550; *Center for Biological Diversity v. California Department of Fish and Wildlife* (2015) 62 Cal.4th 204, 215 (*Biological Diversity*).) It also ordered the preparation and approval of a scoping plan for achieving the "maximum technologically feasible and cost-effective reductions in greenhouse gas emissions" by 2020. (Health & Saf. Code, § 38561, subd. (a).) The 2008 scoping plan identified cuts of approximately 30 percent from the business as usual emission levels predicted for 2020, which was about a 15 percent reduction from the 2008 levels.[1] (*Biological Diversity,* at p. 216.)

---

[1] The business as usual model evaluated emissions assuming no GHG reduction action. (*Biological Diversity, supra,* 62 Cal.4th at p. 216.)

In 2010, a new CEQA Guideline on Determining the Significance of Impacts from Greenhouse Gas Emissions gave lead agencies discretion for estimating the amount of GHG a project will emit and offered three factors for consideration: (1) the extent to which the project may increase or reduce GHG emissions as compared to the existing environmental setting; (2) whether project emissions exceed a threshold of significance the lead agency deems applicable; and (3) the extent to which the project complies with regulations or requirements implementing a statewide, regional, or local plan to reduce or mitigate GHG emissions. (Cal. Code Regs., tit. 14, § 15064.4, subd. (b);[2] *Biological Diversity*, *supra,* 62 Cal.4th at p. 217.) These requirements "must be adopted by the relevant public agency through a public review process and must reduce or mitigate the project's incremental contribution of greenhouse gas emissions. If there is substantial evidence that the possible effects of a particular project are still cumulatively considerable notwithstanding compliance with the adopted regulations or requirements, an EIR [environmental impact report] must be prepared for the project." (§ 15064.4, subd. (b)(3).)

In April 2015, Governor Edmond G. Brown, Jr. signed executive order B-30-15, which added a reduction target of 40 percent below 1990 levels by 2030. (Sen. Rules Com., Off. of Sen. Floor Analyses, Sen. Bill No. 32 (2015-2016 Reg. Sess.) as amended Aug. 19, 2016, p. 4, no. 3.) Executive Order B-30-15 was codified by Senate Bill No. 32, which was signed into law September 8, 2016.

---

[2] Subsequent section references are to the CEQA Guidelines, California Code of Regulations, title 14, unless otherwise specified.

B. *Factual and Procedural Background*

In August 2011, the County updated its 1978 General Plan. The corresponding environmental impact report (EIR) incorporated mitigation measures to address GHG emissions. The mitigation measures were intended to reduce the impact County operations would have on the environment. Mitigation Measure CC-1.2 required the County to prepare a CAP, including an update on the baseline inventory of GHG from all sources.[3] It also required GHG emission targets and deadlines for achieving the reductions in County operations and the community. Mitigation Measure CC-1.8 required the County to "[r]evise County Guidelines for Determining Significance based on the Climate Change Action Plan." Thus, to comply with the General Plan Update, the County needed to adopt a CAP and develop thresholds for determining significance based on the CAP.

The County subsequently developed and adopted a CAP in 2012, which the Sierra Club challenged via a petition for a writ of mandate, arguing it violated CEQA. The trial court issued the writ in April 2013 and, while the appeal in that matter was pending, the County adopted the 2013 Guidelines for Determining Significance for Climate Change (2013 Guidelines). Sierra Club filed a supplemental petition for writ of mandate in

---

[3]     The CAP initially had four purposes: reducing GHG emissions consistent with A.B. 32, Executive Order S-3-05, and CEQA Guidelines; allowing lead agency to adopt a plan or program addressing the cumulative impacts of projects; providing a mechanism for subsequent projects to use to address GHG impact; and complying with mitigation measure CC-1.2. (*Sierra Club v. County of San Diego* (2014) 231 Cal.App.4th 1152, 1160 (*Sierra Club*).)

5

February 2014, seeking to set aside the 2013 Guidelines. The parties entered a stipulation staying the supplemental petition pending the outcome of the appeal.

In 2014, we issued our decision affirming the original writ of mandate in *Sierra Club, supra,* 231 Cal.App.4th 1152. The trial court subsequently entered a supplemental writ of mandate (Supplemental Writ) directing the County to set aside the 2012 CAP and environmental findings, as well as the 2013 Guidelines. The court also ordered the County to design a schedule for preparing a new CAP and new guidelines for determining significance for GHG emissions in compliance with CEQA, and it retained jurisdiction until it determines compliance with CEQA. The County complied with the Supplemental Writ requirements, including designating a timeline for the development of the CAP.

While separately developing the CAP, in July 2016 the County published the 2016 Guidance Document. In September 2016, Sierra Club filed a second amended petition for a writ of mandate challenging the adoption of the Guidance Document. While the matter was pending, Golden Door Properties, LLC (Golden Door) filed a petition and complaint for injunctive and declaratory relief related to the 2016 Guidance Document. In January 2017, the trial court granted a stipulation permitting the *Golden Door v. County of San Diego*, Case No. 37-2016-00037402-CU-TT-CTL, case to be heard with the Sierra Club matter.[4]

---

4    Golden Door and Sierra Club filed separate appeals, which were consolidated upon Golden Door's request. Golden Door and Sierra Club are collectively referred herein as Plaintiffs.

The trial court concluded the claims were ripe, the 2016 Guidance Document creates a threshold of significance under CEQA, the Guidance Document violates the County's Mitigation Measures CC-1.2 and CC-1.8, and it is not based on substantial evidence. The trial court further concluded the County was out of compliance with the writ of mandate because the 2016 Guidance Document constitutes piecemeal environmental review. The court granted a second supplemental peremptory writ of mandate and injunction and entered judgment "prohibiting the County from using the 2016 Guidance Document and its 'County Efficiency Metric' for CEQA review of GHG impacts for development proposals on undeveloped land in San Diego County." The County now challenges the writ and judgment.

C. *The 2016 Guidance Document*

The County issued its 2016 Guidance Document on July 29, 2016. The "Significance Criteria" section has "Guidelines for Determining Significance," which "include[] identification and justification of the selected significance criteria used to assess impacts." It contains the following language: "The significance criteria used in the Climate Change Analysis should include a statement and supporting analysis as to whether the subject project complies with GHG reduction requirements under AB 32, the Global Warming Solutions Act of 2006 for the year 2020; and whether the subject project is on the trajectory towards GHG emission reduction goals of Executive Orders S-3-05 and B-30-15 at buildout. Additional detail on the process to make the latter determination is provided below. Due to the range of project types processed by the County, significance criteria and analysis approaches may vary. The following sections

7

identify one potential set of criteria and methodologies, along with supporting evidence that would be appropriate for a Climate Change Analysis."

In the subsequent "Significance Determination" section, the County explains: "The County Efficiency Metric is the recognized and recommended method by which a project may make impact significance determinations. The County is recommending a quantitative GHG analysis be conducted and the significance of the impact determined for project emissions at 2020 and buildout year (if post-2020). For a Climate Change Analysis to be considered adequate, the County recommends quantification of GHG emissions at 2020 and project buildout. The determination of a project's efficiency may be determined by using applicable efficiency metrics derived for those specific years, e.g. 2020 and project buildout (if post-2020). Other methods to determine the significance impacts relative to project emissions at 2020 and buildout will be considered on a case-by-case basis. All analysis (significance determination) results must be supported with substantial evidence." The 2020 Efficiency Metric, which the County has identified as "the recognized and recommended method," is 4.9 metric tons of $CO_2$e per service population per year for 2020.

## III

## DISCUSSION

A. *The Matter is Ripe for Consideration*

The County challenges the trial court's second supplemental writ as unripe for adjudication because the County's CAP development is proceeding within the time frame

8

laid out in its initial return on the Supplemental Writ.  Additionally, the County contends the controversy does not apply to a specific set of facts and so is akin to the situation in *Pacific Legal Foundation v. California Coastal Commission* (1982) 33 Cal.3d 158 (*Pacific Legal*), where the Supreme Court found the matter to be unripe.  Plaintiffs contend the 2016 Guidance Document requires application of a threshold of significance, so *California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2016) 2 Cal.App.5th 1067 (*Cal BIA*) is more analogous, and they seek a finding in favor of justiciability issue here.  We agree with Plaintiffs.

Ripeness is "primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal, supra,* 33 Cal.3d at p. 170.)  An " 'actual controversy' " is "one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts.  The judgment must decree, not suggest, what the parties may or may not do.  [Citations.]" (*Selby Realty Co. v. City of Buenaventura* (1973) 10 Cal.3d 110, 118; *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573-1574.)  Ripeness requirements "should not prevent courts from resolving concrete disputes if the consequences of a deferred decision will be lingering uncertainty in the law, especially when there is widespread public interest in the answer to a particular legal question." (*Pacific Legal,* at p. 170.)  Instead, courts should consider

9

" ' both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " (*Id.* at p. 171, italics omitted.)

In *Pacific Legal*, the California Supreme Court considered a challenge to the interpretation of the public beach access conditions on permit requests under the Coastal Commission's guidelines interpreting the Coastal Act,[5] and the court explained it could not evaluate the consistency of the Commission's guidelines with the Coastal Act absent application to specific facts.[6] (*Pacific Legal, supra,* 33 Cal.3d at pp. 169-170, 172.) It also explained the homeowners were not suffering any hardship, concluding they would "eventually wish to make improvements on their property," but until they did and challenged application of the guidelines, it would be "sheer guesswork to conclude that the Commission [would] abuse its authority by imposing impermissible conditions on any permits required." (*Id.* at pp. 172-174.) Accordingly, it determined the matter was not ripe. (*Ibid.*)

In contrast, in *Cal BIA,* the court considered district guidelines that provided thresholds of significance which could be used "to routinely assess the effect of existing

---

[5]     Pacific Legal Foundation's original lawsuit "did not challenge any individual permit condition; rather it attacked the general access policies of the Commission." (*Pacific Legal, supra,* 33 Cal.3d at p. 163.) The appeal initially included a second action, filed by two homeowners over the application of the access provision to a particular permit application. (*Id.* at pp. 163-164.) After completing briefing, the Commission moved to dismiss the homeowners' matter with prejudice. (*Id.* at p. 164.) The dismissal eliminated the need to address the merits of that matter, leaving only the facial challenge. (*Id.* at pp. 166-167.)

[6]     The court also noted application to a specific set of facts would be the best way to examine injury to property rights. (*Pacific Legal, supra,* 33 Cal.3d. at pp. 170, fn. 6 & 172, fn.7.)

10

environmental conditions on future users or occupants of a project." (*Cal BIA, supra,* 2 Cal.App.5th at p. 1088.) Unlike the question of whether the guidelines would be applied during a permitting process that might or might not ever occur in *Pacific Legal*, the guidelines at issue in *Cal BIA* established thresholds of significance which were to be used routinely to determine environmental effects of a project. (*Cal BIA,* at p. 1088; see *Pacific Legal, supra,* 33 Cal.3d at pp. 169-170.) Though the district argued the guidelines were merely advisory and nonbinding, the court concluded they were nonetheless "interpretive guidelines for CEQA analyses promulgated by an air district that acts as either the lead agency or a responsible agency on projects within its jurisdictional boundaries," and thus the matter was "fit for judicial determination." (*Cal BIA,* at pp. 1088-1089.) The general application of the guidelines persuaded the court the controversy was ripe. (See *ibid.*)

The language in the 2016 Guidance Document is similar to language found in the guidelines at issue in *Cal BIA*. For example, in *Cal BIA,* the guidelines "recommend that lead agencies . . . use the threshold of significance" supplied by the guidelines, but also explained it did "not believe there [was] only one threshold for GHG emissions that [could] be supported by substantial evidence." And rather than mandating the use of the interim GHG threshold, the guidelines simply stated that the threshold "can be used by lead agencies within the Bay Area." Similarly here, the County noted "alternative approaches to evaluating GHG emissions may be utilized," and "[d]ue to the range of project types processed by the County, significance criteria and analysis approaches may vary." Nonetheless, the 2016 Guidance Document also provided an Efficiency Metric it

11

described as "the recognized and recommended method by which a project may make impact significance determinations." The possibility that an alternative method for determining significance may apply does not change the general applicability of the Efficiency Metric. Instead, just like the guidelines in *Cal BIA*, the 2016 Guidance Document provides a threshold of significance, which the Agency would be generally applying to project proposals, as discussed more fully *post*.

Moreover, the matter before us will resolve an active dispute about the County's compliance with an earlier writ, as well as whether its actions comply with CEQA, issues of public interest. (See *Cal BIA, supra,* 2 Cal.App.5th at p. 1089; see also *Pacific Legal, supra,* 33 Cal.3d at p. 171.)

Finally, the County's argument the matter is unripe because it has followed its timeline for completion of a CAP and thresholds of significance mandated by the Supplemental Writ is unpersuasive. As we explain more fully *post*, the separate adoption of the 2016 Guidance Document violates the Supplemental Writ, thereby creating a controversy ripe for review.

B. *The 2016 Guidance Document Violates CEQA, County Guidelines, and the Supplemental Writ*

Plaintiffs challenge the County's failure to comply with CEQA's procedures. They also contend the County did not support its 2016 Guidance Document with substantial evidence. The County admits the 2016 Guidance Document was not formally adopted

12

and was not subject to a public review process.  Thus, a finding that the document establishes a threshold of significance for general use means the County is out of compliance with the CEQA requirement that a threshold of significance be adopted "by ordinance, resolution, rule, or regulation, and [be] developed through a public review process."  (§ 15064.7, subd. (b).)

### 1. *Standards of Review*

When a public agency takes a quasi-legislative action, judicial review of the action for CEQA compliance evaluates whether there was a prejudicial abuse of discretion.  (Pub. Resources Code, § 21168.5.)  "Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence."  (*Ibid.*; see *Vineyard Area for Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 426 (*Vineyard*).)  We conduct an independent review to assess whether the public agency proceeded in the manner the law requires.  (*Vineyard,* at pp. 426, 435; *Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 564 [courts "scrupulously enforce all legislatively mandated CEQA requirements"].)  While we review de novo, we also afford deference to factual conclusions, as long as they are supported by substantial evidence.  (*Vineyard*, at p. 435.)  Substantial evidence exists when there is "enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached."  (§ 15384; see *Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1133.)  Thus, we review the allegations regarding

13

procedural compliance de novo and the substantive allegations under a substantial evidence standard.

### 2. *The Efficiency Metric Establishes a Threshold of Significance*

A threshold of significance is "an identifiable, quantitative, qualitative or performance level of a particular environmental effect, non-compliance with which means the effect will normally be determined to be significant by the agency and compliance with which means the effect normally will be determined to be less than significant." (§ 15064.7, subd. (a).)  In defining a threshold of significance, the CEQA Guidelines do not ask whether the agency normally applies the threshold of significance but instead asks whether the criteria, when applied, normally determines the impact to be significant.[7]  (See § 15064.7, subd. (a).)  When deviation from a threshold of significance must be documented and justified, the threshold becomes a presumptive threshold.  (See *Save Cuyama Valley v. County of Santa Barbara* (2013) 213 Cal.App.4th 1059, 1068 (*Save Cuyama*).)  A threshold of significance that is "clearly erroneous and unauthorized" under CEQA must be set aside.  (*Cal BIA, supra,* 2 Cal.App.5th at p. 1088.)

The County contends the Efficiency Metric does not establish a threshold of significance because it is recommended, not required, and so is not "normally . . . used to determine the significance of a project's GHG emissions."  Instead, the County contends

---

[7]      The County notes *Cal BIA* did not consider whether the guidelines there established a threshold of significance because the court instead considered whether the established thresholds were routinely applied.  (See *Cal BIA, supra,* 2 Cal.App.5th at pp. 1088-1089.)  Our conclusion that the Efficiency Metric is a threshold of significance does not rely on reasoning in *Cal BIA*.

14

the 2016 Guidance Document recommends a methodology for evaluating GHG emissions, which is distinct from a threshold for determining the significance of the GHG emissions. We disagree.

The 2016 Guidance Document's "recognized and recommended" Efficiency Metric of 4.9 metric tons of $CO_2$e per service population per year establishes the level above which a project's GHG impact is significant and below which the impact will be found less than significant. This number is an identifiable and quantitative performance level of the particular environmental effect, and noncompliance with that amount will normally mean the proposed project is significant, while compliance with that number will normally mean the proposed project is less than significant. It is not a "methodology," or a way to determine a threshold of significance; it is a single, quantifiable volume of emissions. Accordingly, the County has set a threshold of significance.

The County contends the requirement emissions comply with A.B. 32, executive orders, and any applicable plan or regulation means the 2016 Guidance document does not supply a threshold of significance. It also contends the trial court's conclusion to the contrary was the result of considering select phrases out of context. While the 2016 Guidance Document states, "significance criteria and analysis approaches may vary," and the "following sections identify one potential set of criteria and methodologies," these phrases are overshadowed by the language introducing the "Significance Determination" section, which explains "[t]he County Efficiency Metric is the recognized

15

and recommended method by which a project may make impact significance determinations."

The County also compares its 2016 Guidance Document to its 2013 Guidelines to argue the 2016 Guidance Document could not establish a threshold of significance because it is not as explicit as the 2013 Guidelines.  But the more explicit and prescriptive nature of the previously vacated 2013 Guidelines does not make the 2016 Guidance Document compliant with CEQA or County CEQA Guidelines.  Whether or not the 2013 Guidelines were more explicit is not relevant to the conclusion the Efficiency Metric establishes a threshold of significance.[8]

### 3. *The 2016 Guidance Document Violates CEQA*

Having determined the Efficiency Metric is a threshold of significance, we conclude the 2016 Guidance Document "must be adopted by ordinance, resolution, rule, or regulation, [be] developed through a public review process[,] and be supported by substantial evidence."  (§ 15064.7, subd. (b).)  The County's reliance on *Save Cuyama, supra,* 213 Cal.App.4th 1059 to argue CEQA compliance is unnecessary because the threshold of significance is evaluated on a case-by-case basis does not persuade us otherwise.  *Save Cuyama* acknowledges a threshold for general use is subject to CEQA public adoption guidelines.  (*Id.* at p. 1068.)  The purpose of the 2016 Guidance

---

8       In its opening brief, the County directly compares the language in its 2013 Guidelines to language in the 2016 Guidance Document.  Then, in its reply brief, the County argues the vacated 2013 Guidelines are immaterial to the analysis of the 2016 Guidance Document.  For the reasons previously expressed, we agree the 2013 Guidelines are immaterial here.

Document is to provide the "recognized and recommended method by which a project may make impact significance determinations"; thus, compliance is required. The County acknowledges the Efficiency Metric was not formally adopted by ordinance, rule, resolution, or regulation and was not developed through a public review process. Accordingly, the 2016 Guidance Document is out of compliance with state CEQA requirements.

Additionally, the County's General Plan Update EIR includes mitigation measures CC-1.2, which requires the County to prepare a CAP, and CC-1.8, which requires the County to revise its guidelines for determining significance based on the County's CAP. County CEQA Guidelines adopted by the board of supervisors in 2009 require public circulation and review before "any administrative guidance or revisions are approved by the Processing Department."[9] Here, no CAP was in place when the County published the Guidance Document, and the document was not publicly circulated and reviewed before the processing department approved it.

4. *The Significance Threshold is Not Supported by Substantial Evidence*

Plaintiffs contend the 2016 Guidance Document fails to provide substantial evidence to support its recommended Efficiency Metric. The County distinguishes the 2016 Guidance Document from the project level environmental impact report in *Biological Diversity, supra,* 62 Cal.4th 204, describing the Guidance Document as a

---

[9]   The County CEQA Guidelines define the " 'Processing Department' " as a "County agency, department, or other division responsible for processing a permit or similar entitlement, or for initiating a County project. . . ."

17

method for assessing GHG efficiency on a case-by-case basis. However, the County fails to address adequately the core concern raised by plaintiffs in the court below, which is reliance on statewide data without evidence supporting its relationship to countywide reductions fails to meet the substantial evidence standard. We agree.

In *Biological Diversity,* the Supreme Court concluded the environmental impact report's use of statewide emission reduction goals was a "permissible criterion of significance." (*Biological Diversity, supra,* 62 Cal.4th at p. 213.) At the same time, the court concluded the report did not provide substantial evidence to support the conclusion the cumulative GHG emissions would be less than significant based on the project level reduction of 31 percent, even though the amount was consistent with A.B. 32's statewide goal of 29 percent. (*Id.* at p. 225.) The court acknowledged the required percentage reduction for an individual project may not be the same as for the entire state population and economy because "a greater degree of reduction may be needed from new land use projects than from the economy as a whole." (*Id.* at p. 226.) In other words, using a statewide criterion requires substantial evidence and reasoned explanation to close the analytical gap left by the assumption that the "level of effort required in one [statewide] context . . . will suffice in the other, a specific land use development." (*Id.* at p. 227.)

The Efficiency Metric, which relies on statewide standards, must be justified by substantial evidence to explain why it is sufficient for use in projects in San Diego County. The 2016 Guidance Document explains the recommended Efficiency Metric "represents the rate of emissions needed to achieve a fair share of the State's emissions mandate embodied in AB 32 and Executive Orders B-30-15 and S-3-05." It identifies a

18

quantitative efficiency metric for 2020 to be 4.9 MT $CO_2$e per service population per year. The County argues this supplies San Diego specific data. However, as noted by the trial court, the service population number relies on statewide service population and GHG inventory data; it does not address San Diego County specifically, and it does not explain why using statewide data is appropriate for setting the metric for San Diego County. Additionally, the Efficiency Metric "allows the threshold to be applied evenly to most project types," but it does not account for variations between different types of development; nor does it explain why the per person limit would be appropriately evenly applied despite project differences. Without substantial evidence explaining why statewide GHG reduction levels would be properly used in this context, the County fails to comply with CEQA Guidelines. (See § 15064.7, subd. (c); see also *Biological Diversity, supra,* 62 Cal.4th at p. 227.)

5. *The 2016 Guidance Document Piecemeals Environmental Review*

Plaintiffs contend the issuance and use of the 2016 Guidance Documents undermines a comprehensive mitigation plan because the Guidance Document releases a significance threshold without public review, resulting in piecemealing environmental regulations in contradiction with state law. The County argues its development of a CAP and thresholds of significance are proceeding according to schedule, so the 2016 Guidance Document does not violate our decision in *Sierra Club, supra,* 231 Cal.App.4th 1152 and the Supplemental Writ. To support its contention, the County argues the 2016 Guidance Document complies with *Cleveland National Forest Foundation v. San Diego Assn. of Governments* (2017) 3 Cal.5th 497 (*Cleveland National Forest*) because it takes

19

into consideration "evolving GHG emission reduction goals." This overstates the applicability of *Cleveland National Forest* to the issues at hand.

In *Cleveland National Forest,* the California Supreme Court considered whether an environmental impact report for a regional transportation plan was required to analyze its consistency with the GHG emission reduction goals detailed in Executive Order No. S-3-05 for compliance with CEQA. (*Cleveland National Forest, supra,* 3 Cal.5th at p. 510.) The court concluded it did not. (*Id.* at p. 518.) The Court commented that planning agencies must stay "in step with evolving scientific knowledge and state regulatory schemes." (*Id.* at p. 519.) While the County contends it does just this by requiring a project specific analysis of GHG emissions, the general applicability of the "recognized and recommended" Efficiency Metric demonstrates otherwise.

In *Sierra Club,* we concluded the CAP and thresholds of significance based on the CAP are a single project subject to environmental review.[10] (*Sierra Club*, *supra,* 231 Cal.App.4th at p. 1175.) At the time the second supplemental writ issued here, the County had not completed the CAP, so the 2016 Guidance Document did not comply with the terms of the previous writ requiring compliance with the mitigation measures. Moreover, the County did not conduct public review of the 2016 Guidance Document, which identified a threshold of significance. Thus, the 2016 Guidance Document violates the earlier writ and institutes piecemeal policies.

---

10    "Under the law-of-the-case doctrine, the determination by an appellate court of an issue of law is conclusive in subsequent proceedings in the same case." (*People v. Yokely* (2010) 183 Cal.App.4th 1264, 1273.)

The County attempts to rationalize its distribution and use of the 2016 Guidance Document as necessary so development projects may continue to be processed by the County and developers may conduct environmental reviews of GHG emissions. However, the trial court's writ does not direct the County to halt development projects from being processed; it vacates the Guidance Document and directs the Guidance Document and the Efficiency Metric to not be used to provide the basis for CEQA review of GHG impacts of development proposals on unincorporated County lands.

C. *Parties' Requests for Leave to File Sur-replies is Denied*

The County raises the argument for the first time in its reply brief, based on extra-record evidence, that the 2016 Guidance Document has been superseded. Having previously denied the requests for judicial notice upon which this claim relies, we decline to entertain this argument. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) Similarly, we deny plaintiffs' motions for leave to file sur-replies or in the alternative to strike portions of the reply brief and appellant's combined opposition to the motions, all of which similarly rely on evidence submitted with the previously denied requests for judicial notice.

DISPOSITION

The judgment is affirmed.  Plaintiffs shall recover costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


NARES, J.