Filed 6/26/26  Sierra Club v. County of San Diego CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, | D085664 |
| Petitioner and Appellant, | (Super. Ct. No. 37-2018-00014081-CU-TT-CTL) |
| v. | |
| COUNTY OF SAN DIEGO, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, James Mangione, Judge.  Affirmed.

Chatten-Brown Law Group, Josh Chatten-Brown, Kathryn Pettit and Isabella Coye for Petitioner and Appellant.

David J. Smith, Acting County Counsel and Joshua Heinlein, Chief Deputy County Counsel, for Defendant and Respondent.

This is the fourth appeal in 15 years of litigation over the County of San Diego's (County) approval of a climate action plan under the California Environmental Quality Act (CEQA).  (Pub. Res. Code, § 21000 et seq.)  In the third appeal, we affirmed portions of a writ of mandate directing the County

to remedy a number of identified CEQA violations, including a 2018 supplemental environmental impact report (SEIR) that we found to be deficient because it failed to analyze a "smart growth alternative" to reduce vehicle miles traveled. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 562 (*Golden Door II*); see *id.* at pp. 545–550.)[1] After further proceedings on remand and the preparation of a new SEIR analyzing smart growth alternatives, the County approved a new climate action plan (CAP) in September 2024 and then filed its final return to the writ of mandate. Over Sierra Club's written opposition, the trial court issued an order discharging the writ.

Sierra Club appeals from the discharge of the writ. Sierra Club contends that under *Save the Capitol, Save the Trees v. Department of General Services* (2024) 101 Cal.App.5th 1237 (*Save the Capitol*), the trial court before discharging the writ was required to find that (1) the County had remedied the deficiencies this court identified in *Golden Door II*; and (2) the County had complied with CEQA. Sierra Club further contends that the County violated CEQA when it adopted the new CAP in 2024 by (1) misleading the public and "[d]odg[ing]" legal accountability in its " '[s]election' " of a smart growth alternative; (2) adopting internally inconsistent feasibility findings regarding the smart growth alternative; and (3) failing to adopt all feasible mitigation measures and alternatives. (Boldface omitted.)

_____

[1] "Smart growth means [a] 'compact, efficient, and environmentally sensitive pattern of development that focuses future growth away from rural areas and closer to existing and planned job centers and public facilities, while preserving open space and making more efficient use of existing urban infrastructure.' " (*Golden Door II*, *supra*, 50 Cal.App.5th at p. 534, fn. 40.)

2

We conclude that Sierra Club forfeited any claim that the County did not remedy the deficiencies we identified in *Golden Door II* by failing to make any such argument in its written opposition to the proposed discharge of the writ of mandate.  We further conclude that the alleged CEQA violations it raised in its opposition and now asserts on appeal are new CEQA issues that were not properly raised by way of opposition to the County's writ return. (*Save the Capitol*, *supra*, 101 Cal.App.5th at pp. 1249–1250.)  We therefore affirm the order discharging the writ.

FACTUAL AND PROCEDURAL BACKGROUND

This case has a lengthy record and litigation history spanning more than a decade with three prior opinions from this court.[2]  The procedural history predating the events described here is contained in the prior opinions. We summarize only the facts and history relevant to an understanding of the issues in this appeal.

In *Golden Door II*,[3] we found, among other things, that the 2018 SEIR violated CEQA because it failed to analyze a smart growth alternative aimed at reducing vehicle miles traveled.  (*Golden Door II*, *supra*, 50 Cal.App.5th at

<hr>

[2] *Sierra Club v. County of San Diego* (2014) 231 Cal.App.4th 1152; *Golden Door Properties, LLC v. County of San Diego* (2018) 27 Cal.App.5th 892; and *Golden Door II, supra*, 50 Cal.App.5th 467.

[3] *Golden Door II* contains a comprehensive history and explanation of the County's efforts to meet state greenhouse gas (GHG) targets and the California legislation creating those targets.  (*Golden Door II, supra*, 50 Cal.App.5th at pp. 486–496.)  The County's 2011 General Plan Update is a "comprehensive, long-term plan for developing unincorporated areas of the County" and it "[c]alls for reducing GHG emissions to meet state GHG targets, and requires preparation of a [CAP] to achieve this reduction." (*Golden Door II,* at p. 486.)

pp. 545–550, 562.)  Based on this and other identified CEQA violations, we remanded the matter to the trial court to issue a new writ of mandate, injunction, and judgment and conduct further proceedings consistent with our opinion.[4]  (*Golden Door II*, at pp. 564–565.)  Accordingly, the superior court issued an amended peremptory writ of mandate ordering the County to (1) set aside the 2018 CAP and SEIR and related approvals, (2) submit an estimated schedule for preparing a new CAP, and (3) file supplemental returns updating the schedule every 45 days all while the superior court retained jurisdiction over the proceedings until it determined that the County had adequately complied with CEQA and all other applicable laws.

On November 13, 2020, the County filed its initial return to the peremptory writ certifying it had rescinded the 2018 CAP and related approvals as ordered.  Over the next four years, the County met with Sierra Club and other organizations approximately 30 times to discuss its preparation of the new CAP and SEIR and regularly filed updated supplemental writ returns with the trial court.

On September 4, 2024, the County published its agenda and meeting materials for the September 11, 2024 San Diego County Board of Supervisors (the Board) meeting.  The meeting materials included a letter from County

---

[4]  The other violations we identified in *Golden Door II* were that the 2018 SEIR violated CEQA because its (1) greenhouse gas mitigation measure (M-GHG-1) contained unenforceable performance standards and improperly deferred and delegated mitigation, (2) discussion of cumulative impacts ignored foreseeable impacts from probable future projects, and (3) finding of consistency with the regional transportation plan was not supported by substantial evidence.  (*Golden Door II, supra,* 50 Cal.App.5th at pp. 482–483.)  Additionally, we held that the County abused its discretion in approving the CAP.  (*Ibid.*)  Sierra Club raises no issue on appeal regarding these other CEQA violations and does not contend the County failed to remedy them.

4

staff to the Board, a CAP update action sheet summarizing the options the Board had regarding the CAP and various alternatives, and the proposed Findings and Statement of Overriding Considerations (the proposed Findings).

In the letter, the County asked the Board to adopt the "CAP Update" explaining it fulfilled mitigation requirements set by the County's 2011 General Plan to reduce GHG emissions and met the terms of *Golden Door II*. The letter further explained the CAP Update included an updated 2024 SEIR which "evaluate[d] alternatives to the CAP" and that staff provided "an evaluation of smart growth alternatives." The letter also informed the Board that it was "not required to select any of these smart growth alternatives as part of today's request, but [could] direct staff to pursue and further evaluate one or multiple of these alternatives as part of the Board action today or in the future." The County recommended the Board certify the CAP Update and 2024 SEIR. It also explained that if the Board was interested in pursuing any of the smart growth alternatives it would require further Board action.

The 2024 SEIR, in relevant part, discusses various smart growth alternatives selected for analysis, including the Fire Safe and Vehicle Miles Travelled Efficient Alternative (the VMT Alternative), the Village Support Areas Alternative, and the Sustainable Communities Strategy Alternative. The VMT Alternative was developed through stakeholder outreach to address effects of growth under the adopted General Plan. The VMT Alternative would focus future growth away from rural areas and closer to existing and planned job centers and public facilities with the goal of addressing the effects of development and promoting a pattern of development that further reduces VMT and resultant GHG emissions. The 2024 SEIR stated that if implemented, "the [VMT Alternative] would result in a[n] [overall] 0.53

5

percent reduction in unincorporated county VMT for 2035 and a 0.41 percent reduction in unincorporated county VMT for 2050." Therefore, according to the 2024 SEIR, although this alternative would reduce VMT from new development, the magnitude of VMT or GHG emissions reductions in the unincorporated county would be much smaller when all VMT in the future is considered.

The Village Support Areas Alternative (Village Alternative) was built on a Villages concept established in the adopted General Plan. The 2024 SEIR's analysis of this alternative focused on VMT and GHG impacts. "To spur redevelopment in the Villages and create a synergy for smart growth, this alternative would establish 0.5-mile buffers around the established Villages, referred to as Village Support Areas, wherein housing development and services to support development in the Villages would be encouraged." "Overall, the [Village Alternative] would result in a 0.08 percent reduction in unincorporated county VMT for 2035 and a 0.04 percent reduction in unincorporated county VMT for 2050." The 2024 SEIR concluded that "this alternative is not expected to meaningfully reduce VMT or associated GHG emissions in the unincorporated county."

The Sustainable Communities Strategy Alternative (Sustainable Alternative) focused growth in the portions of the Mobility Hubs in the unincorporated county. Mobility Hubs are envisioned as places of activity where capital transportation investment will support future housing and jobs, and encompass areas that are both within incorporated city boundaries and within the unincorporated county. Overall, this alternative would result in a 7.71 percent reduction in VMT compared to the adopted General Plan in 2035 and a 9.48 percent reduction in VMT compared to the adopted General Plan in 2050. This alternative was assumed to substantially reduce GHG

6

emissions associated with VMT in the unincorporated county compared to the General Plan. However, the total VMT reductions were based on the Regional Plan's premise of a distribution of growth within Mobility Hubs that encompass areas outside of the unincorporated county. The 2024 SEIR concluded that "the actual VMT reductions achieved under this alternative may be less than modeled for the purposes of this analysis."

The proposed Findings certified that the 2024 SEIR was completed in compliance with CEQA and was presented to the Board for review and consideration before approval. With respect to the alternatives in the SEIR, the proposed Findings explained they were formulated, in part, to satisfy the directives in *Golden Door II*. The proposed Findings included a summary of each alternative analyzed in the 2024 SEIR and the rationale as to why the Board determined the Project was preferred over each alternative. The Board rejected the No Project Alternative as infeasible because it failed to meet any of the project objectives and would result in greater GHG emissions and VMT impacts when compared to the Project. As to the smart growth alternatives, the Board concluded that, "for the time being at least, the [VMT Alternative, Village Alternative, Sustainable Communities Alternative, and Policy Edits Alternative] cannot be accomplished within a reasonable period of time and for that reason [are] infeasible at present." The proposed Findings explained that "implementation of the smart growth alternatives is intended to occur in addition to, rather than in lieu of, the measures and actions in the CAP Update." "If adopted in addition to the proposed Project, implementation of one of the smart growth alternatives, or some combination of them, would require additional actions by the Board, such as direction of new technical studies, program development, and extensive stakeholder and community engagement." Relatedly, the proposed Findings explained that

7

the Board directed "pursuit of other land use programs that are intended to reduce VMT in the unincorporated county." Because these efforts "will serve the same purpose as the smart growth alternatives" the Board rejected the alternatives in the SEIR "for the time being because they cannot be implemented within a reasonable period of time."

On September 9, 2024, the executive director of Endangered Habitats League emailed the deputy director of the County to ask for clarification on the proposed finding of infeasibility for the VMT Alternative. In response, County staff explained that "CEQA requires a lead agency to make various [f]indings when certifying an EIR [(Environmental Impact Report)]. Rejection of the alternatives is one component of those [f]indings, which are necessary whenever a proposed project is adopted." The County went on to explain that if the Board directed a smart growth alternative, the County recommended that it be integrated into ongoing efforts like the Sustainable Land Use Framework.

On September 11, 2024, the Board held a meeting in which the County recommended it approve the Project which included adoption of the CAP Update and certification of the 2024 SEIR. The County staff explained the Board could "choose to select any smart growth alternative which would require subsequent planning and technical analysis, stakeholder engagement, and additional CEQA analysis before they are adopted at a future hearing." Responding to a Board member question, County counsel confirmed the Board was not required to adopt any of the smart growth alternatives and explained that the proposed motion would adopt the CAP and SEIR and "include the staff's recommendation … to pursue the [VMT Alternative] with the County's ongoing land use planning efforts… Meaning

8

it would not have an impact on the CAP. It would be a parallel working plan."

After hearing from the public and Board members, the Board took the following actions: (1) adopted the proposed Findings and certified the 2024 SEIR; (2) adopted the Guidelines for Determining Significance for Climate Change and Greenhouse Gas Threshold of Significance; (3) adopted the final CAP Update; (4) adopted the Climate Action Plan Consistency Review Checklist; (5) adopted resolution No. 24-116 updating the 2011 General Plan Update Program EIR Mitigation Measure; (6) adopted resolution No. 24-117 adopting the General Plan Amendment; (7) adopted resolution No. 24-118 to apply for and accept grant funding to support the CAP; (8) adopted resolution No. 24-119 adopting the GHG threshold of significance; and (9) authorized the director of Planning & Development Services to apply for and accept grant funds and negotiate contracts to support implementation of the CAP. The Board additionally selected options: (A1) the VMT Alternative; (2A) integrate smart growth alternative concepts to existing ongoing efforts; and (2C) options for evaluation of implementation of geographic-based smart growth alternatives. Lastly, the Board directed the chief administrative officer to convene the environmental justice working group to advise on the implementation of the CAP.

Sierra Club believed the VMT Alternative was adopted at the September 11, 2024 Board meeting.

One month later, the County provided Sierra Club with a copy of the County's final adopted CEQA Findings and Statements of Overriding Considerations. The final adopted Findings were the same as the proposed Findings published on September 4 and included the same infeasibility findings as to the alternatives.

9

On October 18, 2024 the County filed its final return to the preemptory writ of mandate. The County stated it had adopted a new CAP, certified the CAP's SEIR, and took other associated actions to support and implement the CAP. The County also asserted that any challenges to the adoption of the new CAP and SEIR were barred by the statute of limitations.

Sierra Club filed an opposition to the County's request for discharge of the writ along with a supporting declaration and exhibits. Sierra Club asked the court to set a hearing on the matter but did not request further briefing or an opportunity to submit additional evidence. Sierra Club opposed the discharge of the writ due to (1) the apparent contradiction between the County's findings declaring the VMT Alternative infeasible and the Board's purported adoption of the VMT Alternative; and (2) the County's proposed timeline for implementing the VMT Alternative. In its opposition, Sierra Club did not cite *Golden Door II* or *Save the Capitol*, did not assert that the County had failed to remedy any of the specific CEQA violations identified in *Golden Door II*, and did not argue that the 2024 SEIR's analysis of smart growth alternatives was deficient.

In its response to Sierra Club's opposition, the County claimed Sierra Club's challenges were barred by the statute of limitations and failure to exhaust administrative remedies. The County further stated that the Board did not approve or adopt the VMT Alternative, but directed staff to conduct further analysis to potentially implement the VMT Alternative in the future.

On November 13, 2024, the trial court discharged the writ. The trial court did not hold a hearing or provide any explanation or analysis for its action. Sierra Club timely appealed.[5]

---

[5] The parties' unopposed requests to take judicial notice are granted.

DISCUSSION

I

On appeal, Sierra Club has filed a motion requesting that we correct the notice of appeal to add additional parties.  The notice of appeal identifies Sierra Club as the appellant while the underlying dispute included the following additional petitioners:  Center for Biological Diversity, Cleveland National Forest Foundation, Endangered Habitats League, Environmental Center of San Diego, and Preserve Wild Santee.  Sierra Club asks us to add the missing parties as additional appellants under Code of Civil Procedure section 473, which authorizes the court to correct clerical mistakes and inadvertent omissions.

Sierra Club argues that notices of appeal are to be liberally construed to protect the right of appeal and that the California Rules of Court permit the court to correct the record at any time.  (Cal. Rules of Court, rule 8.155(c).)  Citing *K.J. v. Los Angeles Unified School District* (2020) 8 Cal.5th 875 (*K.J.*), Sierra Club explains that if the record is clear that an omitted appellant intended to participate and the respondent is not prejudiced by the inclusion later, the appellate court should construe the notice of appeal to include the omitted party.  In its opposition, the County argues we lack jurisdiction to consider an appeal by unnamed petitioners and that Sierra Club's counsel made false statements to this court by claiming the omission was inadvertent.

A notice of appeal must be liberally construed.  (Cal. Rules of Court, rule 8.100(a)(2).)  We must therefore evaluate whether the notice of appeal serves its basic function "to provide notice of who is seeking review of what order or judgment." (*K.J.*, *supra*, 8 Cal.5th at p. 883.)  In *K.J.,* the notice of appeal excluded the name of the sanctioned attorney, though it referenced

11

the sanctions order.  (*Id.* at p. 885.)  The court concluded that "a reviewing court must construe a notice of appeal from a sanctions order to include an omitted attorney when it is reasonably clear that the attorney intended to join in the appeal, and respondent was not misled or prejudiced by the omission."  (*Ibid.*)  The court found it was clear from the record that the omitted attorney intended to participate in the appeal because (1) the notice of appeal designated only the sanctions order and no other order or judgment; (2) the sanctions order only imposed sanctions against the attorney and had no effect on the rights of the client; and (3) the attorney had engaged in substantial litigation regarding the sanctions in the trial court.  (*Id.* at pp. 878, 889–890.)

Here, by contrast, Sierra Club has not pointed to anything in the record making it reasonably clear that the other omitted parties intended to appeal.  In contrast to *K.J.*, they were not the *only* parties aggrieved by the appealed order.  Notably, the other parties were not listed on the notice of appeal, the designation of record, or the Civil Case Information Sheet (CCIS), which requires that all parties be listed individually.  (See CCIS p. 3 ["list all the parties and all their attorneys of record who will participate in the appeal"])  We see nothing in the record suggesting the other parties intended to appeal even though only Sierra Club was listed as an appellant on all the critical documents initiating the appeal.  We therefore deny the motion to correct the notice of appeal.

## II

Sierra Club has also filed a motion asking our court to take new evidence under Code of Civil Procedure section 909.  Specifically, Sierra Club requests that we consider a December 4, 2024 memorandum and supporting declaration regarding a conversation it had on November 19, 2024 with the

12

Chief of Intergovernmental Affairs for the County's First Supervisorial District.  The conversation memorialized in the memorandum, Sierra Club argues, shows that the Board adopted the VMT Alternative at the September 11 board meeting and subsequently misled the public.

Sierra Club contends that it intended to present these documents to the trial court at a hearing on the proposed discharge of the writ to show that the County had adopted the VMT Alternative.  However, on November 13, the trial court discharged the writ without a hearing and Sierra Club was not able to file these documents.  The County opposes Sierra Club's request arguing that the evidence proffered is not part of the administrative record because it was created after the September 11 meeting and is therefore inadmissible.

" 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule [8.252(b)] of the California Rules of Court, the authority should be exercised sparingly. [Citation.]  *Absent exceptional circumstances, no such findings should be made.*' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)  No exceptional circumstances exist here.  Even assuming it would have been proper for the trial court to consider these documents, Sierra Club could have included them along with the other exhibits it submitted accompanying its opposition below, and it never suggested in those opposition papers that it intended to present additional evidence at the hearing it requested.  Moreover, appellate courts generally only take new evidence on appeal "where to do so will result in the litigation's termination, either by affirming the judgment or reversing and directing judgment be entered in favor of the appellant." (*Bombardier Recreational Products, Inc. v. Dow Chemical Canada ULC* (2013) 216 Cal.App.4th 591, 605.)  Here, Sierra Club is trying to *revive* the underlying

13

litigation based on evidence not previously presented to the trial court.  For these reasons, we deny the motion to take new evidence.[6]

III

On the merits, Sierra Club argues that the trial court prematurely discharged the writ of mandate because it was required to find that the County remedied the deficiencies identified in *Golden Door II* and that it complied with CEQA before discharge.  We reject this contention.

Where the trial court finds, as a result of a remand from an appellate court, that a public agency has violated CEQA, the trial court shall enter a peremptory writ of mandate directing the agency to take certain actions in order to bring the agency into compliance with CEQA.  (*Save the Capitol, supra*, 101 Cal.App.5th at p. 1245.)  To show compliance, the agency must file a return informing the court of the agency's actions in compliance with the writ.  (*Id*. at p. 1246.)  Where the agency's final return states that the court's mandate has been carried out, the petitioner may challenge the validity of that claim by (1) filing a new or supplemental writ; or (2) challenging the writ return as failing to demonstrate compliance with CEQA.  (*Id*. at pp. 1246–1247.)  If the petitioner chooses the latter option, as Sierra Club did here, it may not assert new CEQA challenges.  (*Id*. at pp. 1249–1250.)  Before discharging the writ, the trial court must determine that the agency has remedied the CEQA violations identified in the prior appellate opinion, "but no new issues may be raised by objection to [the agency]'s writ return."  (*Id*. at p. 1250.)

---

[6]    The County's request for monetary sanctions, included in its opposition to Sierra Club's motions to correct the notice of appeal and take additional evidence, is denied.

14

Here, Sierra Club forfeited its claim that the County did not remedy the deficiencies identified in *Golden Door II* by failing to raise that issue in its opposition to the County's writ return. In its opposition, Sierra Club asserted that the County had "not fully complied with [CEQA] due to inconsistencies in its adoption of the [VMT Alternative]." Sierra Club claimed that the County's findings declaring the VMT Alternative as infeasible were inconsistent with the Board's adoption of the VMT Alternative. This internal contradiction, Sierra Club argued, was a violation of CEQA. Sierra Club also argued that the County was required to provide a timeline for implementation of the VMT Alternative.

In *Golden Door II*, the only deficiency we identified relating to a smart growth alternative was that the 2018 SEIR failed to analyze any such alternative. (*Golden Door II*, *supra*, 50 Cal.App.5th at pp. 545–550, 562 [2018 SEIR violated CEQA because it failed to analyze a smart growth alternative aimed at reducing vehicle miles traveled].) However, in its opposition, Sierra Club did not assert that the 2024 SEIR failed to cure this deficiency and did not even include the 2024 SEIR as an exhibit. In fact, Sierra Club did not cite or discuss *Golden Door II* or *Save the Capitol* in its opposition. While Sierra Club's opposition stated it was "concerned" that the County had "still not *fully* analyzed the [VMT Alternative]," it did so only in passing as part of its argument that the County was required to adopt a timeline for implementation of the VMT Alternative. Sierra Club's opposition papers did not identify any deficiency in the 2024 SEIR's analysis and instead "commend[ed] the [County] for its adoption of the [CAP] and the [VMT Alternative] included in the CAP's [EIR]." Moreover, the record reflects that the 2024 SEIR did analyze various smart growth alternatives.

15

Sierra Club claims that "[l]ike in *Save the Capitol*, over [its] objections, the trial court discharged the entire writ without ever reviewing the content of the [2024] SEIR or the record of the reapproval . . . ." But Sierra Club did not submit the 2024 SEIR to the trial court as part of its opposition papers, did not ask the court to review the 2024 SEIR, and did not assert that the County had failed to remedy any of the violations we identified in *Golden Door II*. Sierra Club has forfeited any such claim by failing to raise it in the trial court. (*McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618 ["theories not raised in the trial court may not be raised for the first time on appeal"].)

In supplemental briefing submitted at our request on the forfeiture issue, Sierra Club claimed it was deprived of the opportunity for full briefing and a hearing on its objections in the trial court. But Sierra Club did not raise this as an issue in its opening brief, and our request for supplemental briefing did not allow the parties to raise new issues on appeal. Moreover, Sierra Club did not request an opportunity to submit further briefing or evidence in the trial court and has cited no authority requiring the court to hold a hearing on the matter. Sierra Club filed a written opposition to the proposed discharge of the writ with a supporting declaration and exhibits. It could have submitted other exhibits with the opposition if it wished. Accordingly, we are not persuaded that Sierra Club should be relieved of its forfeiture on the ground that it was deprived of an opportunity for full briefing and a hearing.

We further conclude that the other CEQA issues Sierra Club raised in its opposition below and has now asserted on appeal were not properly before the trial court. Because Sierra Club chose to challenge the County's writ return rather than file a new or supplemental writ petition, it was precluded

16

from raising new CEQA violations beyond those identified in *Golden Door II*. (*Save the Capitol*, *supra*, 101 Cal.App.5th at pp. 1246–1247, 1250; see also *County of Inyo v. City of Los Angeles* (1977) 71 Cal.App.3d 185, 204 (*County of Inyo*) [declining to consider questions which broadened the issues beyond those involving the preparation of a CEQA-compliant EIR as ordered in the writ of mandate].)

Both of the issues Sierra Club raised in its opposition papers below were "new issues" that could not "be raised by objection to [the agency]'s writ return." (*Save the Capitol*, *supra*, 101 Cal.App.5th at p. 1250.) First, Sierra Club asserted that the final adopted findings of infeasibility contradicted the County's adoption of the VMT Alternative in September 2024. We did not consider this issue in our 2020 decision in *Golden Door II*. The narrow CEQA issue we decided was that the 2018 "SEIR violate[d] CEQA because it fail[ed] to *analyze* a smart growth alternative to the Project." (*Golden Door II*, *supra*, 50 Cal.App.5th at p. 562, italics added.) The required *analysis* of alternatives in the SEIR is factually and legally distinct from the claimed CEQA violation arising from the County's subsequent decision whether to *adopt* one of the alternatives.

Specifically, our decision in *Golden Door II* regarding the deficient 2018 SEIR was based on the County's duty to prepare an EIR that " 'must consider a reasonable range of *potentially* feasible alternatives.' " (*Golden Door II*, *supra*, 50 Cal.App.5th at p. 545, italics added.) At the project approval phase, by contrast, the issue becomes "whether the alternatives are *actually* feasible." (*California Native Plant Society v. City of Santa Cruz* (2009) 177 Cal.App.4th 957, 981.) "At that juncture, the decision makers may reject as infeasible alternatives that were identified in the EIR as potentially feasible." (*Ibid*.) "Significantly, different considerations and even different participants

17

may come into play at each of the two phases." (*Id*. at p. 999.) "Broader considerations of policy . . . come into play when the decisionmaking body is considering actual feasibility than when the EIR preparer is assessing potential feasibility of the alternatives." (*Id*. at p. 1000.) Accordingly, the issue we decided in *Golden Door II* regarding the 2018 SEIR's failure to analyze *potentially* feasible smart growth alternatives was factually and legally different from the issue Sierra Club now raises regarding the County's allegedly contradictory 2024 findings on *actual* feasibility when it adopted the new CAP.

Second, Sierra Club argued in its opposition below that the County was required to provide a timeline for implementation of the VMT Alternative. This is also a new issue that could not properly be raised by way of opposition to the County's writ return. (*Save the Capitol*, *supra*, 101 Cal.App.5th at p. 1250.) The County's timeline for implementing the VMT Alternative is factually and legally distinct from the adequacy of the SEIR's analysis of smart growth alternatives. The factual basis for this claim is unrelated to the EIR's analysis of alternatives and the legal grounds for it do not arise from the same CEQA provisions governing EIRs.

Finally, Sierra Club also argues on appeal that: (1) the County's " '[s]election' " of the VMT Alternative in September 2024 misled the public and "[d]odge[d]" legal accountability in violation of CEQA; and (2) the County failed to adopt all feasible mitigation measures and alternatives in violation of CEQA. (Boldface omitted.) To the extent these issues are meant to be distinct from the two asserted in Sierra Club's opposition papers below, they have been forfeited because they are being raised for the first time on appeal. But even if they were not forfeited for this reason, they are also factually and legally different from the issue we decided in *Golden Door II* regarding the

18

2018 SEIR's analysis of smart growth alternatives. These are also new CEQA issues that could not properly be raised by way of objection to the County's final return. (*Save the Capitol*, *supra*, 101 Cal.App.5th at p. 1250.)

Sierra Club's reliance on *County of Inyo* is misplaced. In *County of Inyo,* the court issued a writ of mandate directing the City of Los Angeles to prepare an EIR covering extraction of subsurface water in the Owens Valley. (*County of Inyo, supra,* 71 Cal.App.3d at p. 188.) When the City of Los Angeles submitted its final EIR, the County of Inyo objected to the return asserting that the final EIR failed to comply with CEQA. (*Ibid.*) The court sustained the County of Inyo's objection to the city's writ return on the ground that the EIR was deficient but declined to consider other questions raised by the parties, including the legality of the project approval resolution, because those "questions broaden[ed] the issues beyond those entailed in the measurement of the EIR's sufficiency." (*Id.* at pp. 203–204.) In other words, the court found that the city's failure to prepare a CEQA-compliant EIR was properly asserted by way of objection to the return, but other issues relating to the project approval were not.

As we have explained, the CEQA objections Sierra Club asserted in its opposition below did not challenge the adequacy of the 2024 SEIR or its analysis of smart growth alternatives. Instead, Sierra Club challenged the County's allegedly contradictory determinations of feasibility in connection with its approval of the new CAP and the timeline for implementing the VMT Alternative. These alleged CEQA violations are different from any of those we identified in *Golden Door II* and not comparable to the deficient EIR in *County of Inyo*. Under both *County of Inyo* and *Save the Capitol*, Sierra Club was required to file a new or supplemental petition if it wanted to raise these CEQA challenges because "no new issues may be raised by objection to [the

19

agency]'s writ return."  (*Save the Capitol, supra,* 101 Cal.App.5th at p. 1250.)
We therefore affirm the trial court's order.

DISPOSITION

The order is affirmed.  The County is entitled to its costs on appeal.


BUCHANAN, Acting P. J.

WE CONCUR:


KELETY, J.


RUBIN, J.